2008-NMCA-142

194 P.3d 749

**STATE of NEW MEXICO, ex rel. GARY K. KING, ATTORNEY GENERAL of the State of New Mexico, Plaintiff–Appellant,**

v.

**The AMERICAN TOBACCO COMPANY, INC., et al., Defendants–Appellees.**

No. 27,833.

Court of Appeals of New Mexico.

Sept. 3, 2008.

Gary K. King, Attorney General, David K. Thomson, Assistant Attorney General, Santa Fe, NM, for Appellant.

Brownstein Hyatt Farber Schreck, P.C., Adam E. Lyons, Albuquerque, NM, Howrey L.L.P., Robert J. Brookhiser, Elizabeth B. McCallum, Washington, D.C., for Appellee Subsequent Participating Manufacturers.

Montgomery & Andrews, P.A., Sarah M. Singleton, Santa Fe, NM, for Appellee Philip Morris USA, Inc.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Andrew G. Schultz, Albuquerque, NM, for Appellee R.J. Reynolds Tobacco Co. and Lorillard Tobacco Co.

## OPINION

BUSTAMANTE, Judge.

{1} This case is one among many suits filed across the nation by state attorneys general regarding a comprehensive settlement agreement into which the states entered with various tobacco manufacturers. The settlement agreement requires the manufacturers to make annual payments to the states in exchange for a release of state claims against the manufacturers. However, the settlement agreement provides the manufacturers with a payment offset when an independent auditor determines that certain conditions are met. A dispute arose between the states and the manufacturers regarding whether the manufacturers were entitled to an offset for the calendar year of 2003. New Mexico (the State) filed suit in state district court seeking a declaratory judgment that the manufacturers were not entitled to the offset. The manufacturers filed a motion to compel arbitration pursuant to the settlement agreement, and the district court

granted the motion. The State appeals that decision of the district court. We affirm.

## BACKGROUND

{2} In 1997, the State, along with most other states, filed suit against various tobacco manufacturers. The State sought, among other things, damages for the manufacturers' acts that resulted in deleterious health effects on New Mexico residents. In 1998, the State and 45 other states, the District of Columbia, Puerto Rico and four territories (the Settling States) entered into a Master Settlement Agreement (the MSA) with certain manufacturers known as "Original Participating Manufacturers" (OPMs) that resolved the litigation. The MSA provides that OPMs and any "Subsequent Participating Manufacturers" (SPMs) agree to significant restrictions on the marketing of their products and to make annual payments to the Settling States in return for a release of state claims relating to the use or sale of the OPMs' and SPMs' (collectively, the PMs) products.

{3} Under the MSA, an independent auditor (the Auditor) determines the amount the PMs must pay to the Settling States annually. The PMs do not make direct payments to individual states, but instead make a single payment that the Auditor allocates among the Settling States. The Auditor also determines whether certain conditions exist that entitle the PMs to a payment reduction or elimination for a given year. Those conditions include: (1) the market share of "Non–Participating Manufacturers" (NPMs) increases more than two percent from the base year of 1997; and (2) an independent economic consulting firm determines that the MSA is a significant factor contributing to the PMs' market share loss (and NPMs' market share gain). If these conditions are met, the MSA requires the Auditor to apply the reduction (NPM Adjustment) to the allocated payments of all Settling States. However, an individual state can retain its portion of the allocated payments by demonstrating that it "diligently enforced" a statute imposing similar payment obligations on NPMs (a Qualifying Statute).[1] When a state satisfies the diligent enforcement exemption, and thus retains its portion of allocated payments, the Auditor must reallocate the NPM Adjustment payment reduction among those Settling States that do not meet the exemption.

{4} In March of 2006, the Auditor concluded that the PMs were not entitled to a reduction for the calendar year 2003 based on the above factors. Although the Auditor found that NPM market share had, as a result of the MSA, increased sufficiently to grant an NPM Adjustment, the Auditor applied a legal presumption that the Settling States diligently enforced their Qualifying Statutes. The PMs disputed the Auditor's denial of an NPM Adjustment and sought arbitration of the matter pursuant to the MSA's arbitration clause. The State, like many other states, refused to submit to arbitration and instead filed a complaint in the district court seeking a declaratory order that the State's payment allocation for the calendar year 2003 is not subject to reduction. Although the State acknowledged that the underlying dispute regarding the NPM Adjustment is subject to arbitration under the MSA, the State maintained that the discrete issue of its diligent enforcement of its Qualifying Statute involves a question of law that only the district court can decide.

{5} The PMs filed a motion to compel arbitration, which the district court granted. The district court concluded that the plain language of the MSA requires the parties to resolve the dispute in a single, nationwide arbitration before three former federal judges. The State appeals that decision and presents two issues for review: (1) whether the district court erred in granting the motion to compel arbitration based on the text of the MSA's arbitration clause; and (2) whether the district court erred in referring the matter to a nationwide arbitration involving other states, as opposed to a local arbitration based in New Mexico. We address each of these issues in turn.

---

**1.** The Qualifying Statute in New Mexico is NMSA 1978, §§ 6–4–12 to –13 (1999, as amended through 2004).

**DISCUSSION**

**1. Standard of Review.**

 {6} We review a district court's decision to compel arbitration by applying "the same de novo standard of review used when reviewing a grant of summary judgment." *Fiser v. Dell Computer Corp.*, 2007–NMCA–087, ¶ 6, 142 N.M. 331, 165 P.3d 328. "Interpretation of [an] arbitration clause [of a] settlement agreement is also a question of law subject to de novo review." *Heimann v. Kinder–Morgan CO2 Co., L.P.*, 2006–NMCA–127, ¶ 9, 140 N.M. 552, 144 P.3d 111.

**2. The MSA Requires Arbitration of All Disputes Concerning the Auditor's Allocation Determination, Including Disputes Regarding the Issue of Diligent Enforcement.**

 {7} The State disputes that the MSA's arbitration clause applies to the issue of whether the State diligently enforced its Qualifying Statute. The MSA's arbitration clause provides as follows:

Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

MSA § XI(c). The State asserts that the arbitration clause has a narrow scope in that it is limited to disputes concerning the calculations and determinations of the Auditor that fall under the purview of the Auditor's accounting expertise. The State contends that the Auditor does not have the authority or expertise to make the legal determination of whether the State diligently enforced its Qualifying Statute, which is a matter subject to the jurisdiction of the district court.

{8} As support for its position that the district court has exclusive jurisdiction over disputes regarding diligent enforcement, the State cites Section VII(a) of the MSA, which provides, in relevant part, as follows:

Each Participating Manufacturer and each Settling State acknowledge that the Court: ... (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) *except as provided in subsections IX(d), XI(c)* ..., shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State.

MSA § VII(a) (emphasis added). The State further cites Section VII(c)(1), which states:

*Except as provided in subsections IX(d), XI(c)* ..., any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement (or for a declaration construing any such term ("Declaratory Order")) with respect to disputes, alleged violations or alleged breaches within such Settling State.

MSA § VII(c)(1) (emphasis added).

{9} The State's citation to subsections (a) and (c) of Section VII of the MSA is inapposite. Neither provision makes reference to diligent enforcement, and both provisions specifically state that they do not apply to matters covered by Section XI(c). These provisions do not answer the question of whether Section XI(c) applies to disputes regarding diligent enforcement. To the contrary, the exception of Section XI(c) from the application of subsections (a) and (c) of Section VII, and the language of Section XI(c) itself, suggest that the parties intended that the arbitration panel have exclusive jurisdiction over "[a]ny dispute ... relating to calculations performed by, or any determinations made by, the Independent Auditor[.]" MSA § XI(c). The question we must decide is whether the dispute regarding the Auditor's decision not to apply an NPM Adjustment for 2003 falls within the scope of Section XI©.

{10} The State argues that Section XI(c) does not apply to diligent enforcement issues because the parties could not have intended for the Auditor, who lacks expertise in making legal determinations, to make diligent enforcement determinations. Again, this argument misses the point. The issue before us is not whether the Auditor has the authority or ability to make the diligent enforcement determination, and we will not decide that issue in the first instance. *See Massachusetts v. Philip Morris Inc.*, 448 Mass. 836, 864 N.E.2d 505, 515 (2007) (*Massachusetts*) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims" (internal quotation marks and citation omitted)). *But see Maryland v. Philip Morris Inc.*, 179 Md.App. 140, 944 A.2d 1167, 1177 (Ct.Spec.App.2008) (*Maryland*) (concluding that the Auditor has express authority under the MSA to make a diligent enforcement determination). The question before us is which tribunal has the authority under the MSA to preside over the dispute regarding that issue. *Cf. In re Tobacco Cases I*, 124 Cal.App.4th 1095, 21 Cal.Rptr.3d 875, 882 (2004) ("To determine whether a contractual arbitration clause requires arbitration of a particular controversy, the controversy is first identified and the issue is whether that controversy is within the scope of the contractual arbitration clause."). The State remains free to assert its argument regarding the Auditor's alleged lack of expertise and authority before the appropriate tribunal of first instance.

{11} The State next contends that we should apply the reasoning of the California Court of Appeals in *In re Tobacco Cases I.* That case involved a complaint by the State of California that an SPM was selling cigarettes in the United States through one of its affiliated companies in an attempt to avoid its obligations under the MSA. 21 Cal.Rptr.3d at 877. The SPM filed a motion to compel arbitration under the MSA. *Id.* at 878. The State of California responded that its claims were not subject to arbitration under the MSA because they did not relate to calculations performed by the Auditor. *Id.* at 878–79. Instead, the asserted claims required the district court to determine whether the affiliated company was a subsidiary of, or other entity acting in concert with, the SPM under MSA § VII(e). *In re Tobacco Cases I*, 21 Cal.Rptr.3d at 879.

{12} The district court denied the SPM's motion to compel arbitration, concluding that "[t]he arbitration clause at issue is expressly limited in scope and does not require arbitration of the particular issue raised in this case." *Id.* (internal quotation marks omitted). The district court noted that the arbitration clause only applies to disputes involving the calculations or determinations of the Auditor, and "it is uncontested that [Auditor] has not made any calculations or determinations." *Id.* at 879–80 (alteration in original) (internal quotation marks omitted). The California Court of Appeals affirmed, holding that the controversy related to the interpretation of Section VII(e), which "does *not* involve the calculations and determinations that have been made by [the] Auditor pursuant to section XI[.]" *Id.* at 884.

{13} The State argues that the California Court of Appeals relied on a narrow interpretation of MSA § XI(c). We disagree. As mentioned above, the Court in *In re Tobacco Cases I* simply determined that the underlying controversy related to MSA § VII(e) and did not fall within the scope of MSA § XI(c) because it did not involve the calculations or determinations of the Auditor. The dispute in that case had nothing to do with the question of whether the Auditor has the authority to make a diligent enforcement determination. *In re Tobacco Cases I* therefore does not help us to answer the questions presented in the case at bar.

{14} We conclude that, under the plain text of the MSA, the issue of the State's diligent enforcement arises out of and relates to the Auditor's determination of whether to allow the NPM Adjustment. "The diligent enforcement question, mentioned in the MSA only as part of the NPM Adjustment, is an indispensable underlying issue of the overall NPM Adjustment and, thus, the determination and calculations are inextricably linked." *Maryland*, 944 A.2d at 1177. To exclude the diligent enforcement issue from the scope of

the arbitration clause would require ignoring the broad language of Section XI(c), which states that it applies to *"[a]ny dispute,* controversy or claim *arising out of or relating to* calculations performed by, or any determinations made by, the Independent Auditor" (emphasis added). *See Massachusetts,* 864 N.E.2d at 513.

{15} Moreover, Section XI(c) references other sections of the MSA in a way that suggests that the issue of diligent enforcement is subject to arbitration. Section XI(c) includes, *"without limitation,* any dispute concerning the operation or application of any of the adjustments ... described in subsection IX(j)" (emphasis added). Clause "Sixth" of Section IX(j), in turn, provides that "the NPM Adjustment shall be applied to the results of clause 'Fifth' pursuant to subsections IX(d)(1) and (d)(2)." Subsection IX(d)(1) describes the calculation of the NPM Adjustment, while subsection IX(d)(2)(B) states that "[a] Settling State's Allocated Payment shall not be subject to an NPM Adjustment ... if such Settling State continuously had a Qualifying Statute ... in full force and effect during the entire calendar year ... and *diligently enforced* the provisions of such statute" (emphasis added).

{16} The Court of Special Appeals of Maryland notes that subsection IX(d)(2)(B) "is the *only* MSA provision that mentions 'diligent enforcement.'" *Maryland,* 944 A.2d at 1176. Thus, "[t]he parenthetical 'without limitation' clause [of Section XI(c)] directly identifies the diligent enforcement issue and sets forth that diligent enforcement, along with any other issue regarding the NPM Adjustment, is subject to arbitration." *Id.; see also Massachusetts,* 864 N.E.2d at 512 (holding that the language of Section XI(c) encompasses disputes regarding an NPM Adjustment).

{17} We conclude that the district court did not err in determining that the plain language of the MSA requires the parties to arbitrate the State's claim that it should not be subject to an NPM Adjustment. We note that courts that have considered this issue in nearly all fifty states have reached the same result. *See Maryland,* 944 A.2d at 1173 n. 10 (listing recent decisions from 46 jurisdictions

on this issue); *see also Ieyoub v. Philip Morris, USA, Inc.,* 2008–33, p. 1, (La.App. 3 Cir. 4/30/08); 982 So.2d 296, 298 (reversing sole decision denying arbitration of this dispute). We now turn to the question of whether the district court correctly determined that the present dispute should be arbitrated as part of a nationwide process.

### 3. The MSA Calls For a Nationwide Arbitration Process.

 {18} The State argues that arbitration of the present dispute should take place in New Mexico and not as part of a nationwide process involving all of the Settling States. The State contends that nothing in the MSA indicates that arbitration must take place before a unitary, nationwide panel. Section XI(c) provides that disputes subject to arbitration

> shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

The State asserts that "the two sides to *the dispute"* in this case are the State and the PMs, not all of the Settling States and the PMs. The State further maintains that a nationwide arbitration of the diligent enforcement issue will not account for the idiosyncracies of New Mexico's statutory scheme and issues pertaining to its enforcement. Finally, the State argues that its executive branch would not have the authority to enter into an agreement requiring national arbitration without legislative approval, and compelling the State to submit to nationwide arbitration violates the Eleventh Amendment.

{19} We conclude that the text of the MSA supports the district court's order compelling arbitration of this dispute before a nationwide panel. "The MSA's payment structure is nationwide and unitary." *Maryland,* 944 A.2d at 1180. As the New York Supreme Court, Appellate Division has stated:

> [T]here is a compelling logic to having these disputes handled by a single arbitra-

tion panel of three federal judges, rather than numerous state and territorial courts. It saves all parties to the agreement from having to relitigate the Independent Auditor's determinations on multiple occasions, with potentially conflicting decisions by multiple tribunals.... Since the granting of an exemption by one settling state will automatically lead to the reallocation of its allocated portion of the NPM adjustment to all other non-exempt settling states, each governmental signatory has its own self-interest at stake in the outcome of this issue, which is necessarily in conflict with every other state. Such a result defeats the whole purpose of having a[MSA]. The mechanism of submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate, obviates this problem and ensures fairness for all parties to the MSA. To hold otherwise is contrary to both the spirit and the plain language of the [MSA].

*State v. Philip Morris Inc.,* 30 A.D.3d 26, 813 N.Y.S.2d 71, 76 (N.Y.App.Div.2006) (internal quotation marks and citation omitted). The State's concern that a nationwide arbitration panel will overlook the individual attributes of New Mexico's statutory scheme is speculative and does not provide a basis for precluding a nationwide arbitration. *See Vermont v. Philip Morris USA Inc.,* 945 A.2d 887, 895 (Vt.2008) (noting that "[s]uch problems, if they do materialize, may be raised in a post-arbitration motion to vacate or modify the award pursuant to § 16(a)(3) of the [Federal Arbitration Act]").

■ {20} The State's arguments regarding separation of powers and the Eleventh Amendment are also unpersuasive. The State does not explain why special legislative approval was required for it to enter into the MSA, nor does it demonstrate how a nationwide arbitration would be violative of the Eleventh Amendment. We agree instead with the reasoning of the Supreme Judicial Court of Massachusetts, which held that:

Submitting the diligent enforcement question to an arbitrator cedes neither sovereign power nor 'the task of reviewing discretionary enforcement decisions....' Any determination by the auditor or the arbitrator concerning diligent enforcement has meaning only in the context of the [MSA], with no effect on anyone except for the ... parties. It is an analysis to determine whether a condition in the contract has been met. There is no reason why the [State], as opposed to any other party to a contract, cannot be subject to an analysis of its having met (or not) contractual conditions within the terms established by the contract. Determining whether the [State] has met a condition in a contract does not constitute a cession or delegation of the sovereign enforcement power.

*Massachusetts,* 864 N.E.2d at 514. Accordingly, we affirm the district court's order compelling arbitration before a single, nationwide arbitration panel.

## CONCLUSION

{21} The district court's order compelling arbitration is affirmed.

{22} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.