### STATE OF CONNECTICUT *v.* PHILIP MORRIS, INC., ET AL.
### (SC 18133)

Palmer, Vertefeuille, Zarella, Schaller and Sullivan, Js.

Argued September 4—officially released December 9, 2008

*Joseph Rubin*, associate attorney general, with whom were *Rupal Shah Palanki*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Heather J. Wilson*, assistant attorney general, for the appellant (plaintiff).

*Stephen R. Patton*, pro hac vice, with whom were *James H. Rotondo*, and, on the brief, *Ben A. Solnit, Michael P. Shea*, and *Thomas J. Frederick, Alexander Shaknes, James D. Mathias, Penny Reid, Douglas G.*

*Smith* and *Peter A. Bellacosa,* pro hac vice, for the appellees (named defendant et al.).

*Robert J. Brookhiser,* pro hac vice, with whom was *John F. Conway* and, on the brief, *Elizabeth B. McCallum,* pro hac vice, for the appellees (defendant Commonwealth Brands, Inc., et al.).

*Opinion*

VERTEFEUILLE, J. This case returns to us for a second time. See *State* v. *Philip Morris, Inc.,* 279 Conn. 785, 905 A.2d 42 (2006). The sole issue presented in this certified appeal is whether the current dispute between the defendants[1] and the plaintiff, the state of Connecticut (state), is subject to arbitration under the arbitration provision of the tobacco litigation master settlement agreement (agreement) to which the defendants and the state are parties. The state appeals[2] from the order of the trial court granting the defendants' motion to compel arbitration.[3] The state claims that the

---

[1] The defendants are comprised of two groups, the first of which includes the tobacco manufacturers that originally participated in a master settlement agreement: Philip Morris USA, Inc.; R.J. Reynolds Tobacco Company; Lorillard Tobacco Company; and Brown and Williamson Tobacco Corporation; and the second group consists of tobacco manufacturers that subsequently joined in the settlement agreement: Anderson Tobacco Company, LLC; Canary Island Cigar Company; Chancellor Tobacco Company, PLC; Commonwealth Brands, Inc.; Compania Industrial de Tabaco Monte Paz, S.A.; Daughters and Ryan, Inc.; Farmer's Tobacco Company; General Tobacco; House of Prince A/S; International Tobacco Group (Las Vegas), Inc.; Japan Tobacco International USA, Inc.; King Maker Marketing; Konci G&D Management Group (USA), Inc.; Kretek International; Liberty Brands, LLC; Liggett Group, Inc.; M/s Dhanraj International; Pacific Stanford Manufacturing Corporation; Peter Stokkebye International A/S; PT Djarum; Santa Fe Natural Tobacco Company, Inc.; Sherman 1400 Broadway, N.Y.C., Inc.; Top Tobacco, L.P.; Virginia Carolina Corporation, Inc.; Von Eicken Group; and Wind River Tobacco, LLC.

[2] The state appealed to the Appellate Court from the order of the trial court granting the defendants' motion to compel arbitration. We subsequently granted the defendants' motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] Although the defendants filed their motion to compel arbitration pursuant to both General Statutes §§ 52-409 and 52-410, the parties and the trial court

trial court improperly granted the motion to compel arbitration because the dispute between the parties is not subject to the agreement's arbitration provision. We disagree, and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history, much of it from our decision in *Philip Morris, Inc.*, guide our resolution of the present appeal. "In 1996, the state brought an action against the major American tobacco companies and other related entities alleging that they were engaged in wrongful advertising and marketing of cigarettes and other tobacco products in Connecticut. Thirty-nine other states initiated similar actions in their own courts. In 1998, the civil action initiated by the state was settled, without an admission of liability, when the Superior Court approved a consent decree that the parties submitted to it pursuant to the agreement. Equivalent settlements were reached in the similar actions pending in other states' courts. Under the agreement, the state and fifty-one other governmental entities (collectively, the settling states) agreed to dismiss the pending actions and release all past and future claims in return for the agreement of the four major tobacco manufacturers, Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown and Williamson Tobacco Corporation (collectively, the original participating manufacturers), to: (1) restrict the manner in which they market and advertise tobacco products; and (2) make substantial annual payments to the settling states.

"As an incentive for additional tobacco manufacturers to join in the settlement, the agreement provides that such other manufacturers may agree to abide by

have treated it solely as a motion to compel arbitration under § 52-410. This court repeatedly has held that an order pursuant to § 52-410 is an appealable final judgment. See, e.g., *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 769, 613 A.2d 1320 (1992).

the agreement in the future, and, in return, the settling states will release all past and future claims against them. The agreement refers to the manufacturers who agree to abide by it at some point after the agreement had been executed as subsequent participating manufacturers." (Internal quotation marks omitted.) Id., 788.

The defendants in the present case are both original participating manufacturers and subsequent participating manufacturers.[4] See footnote 1 of this opinion. "Under the agreement, the subsequent participating manufacturers, like the original participating manufacturers, must make annual payments to the settling states.

"The agreement provides that an independent auditor[5] will 'calculate and determine the amounts of all payments owed pursuant to this [a]greement, the adjustments, reductions and offsets thereto . . . the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the [p]articipating [m]anufacturers[6] and among the [s]ettling [s]tates . . . .' The agreement sets forth a detailed procedure by which the independent auditor is to calculate the annual payments due all settling states. In particular, the agreement directs the independent auditor, on the basis of a strict timetable, to request information that it needs to calculate the annual payments from the parties to the agreement, to deliver preliminary calcula-

---

[4] The motion to compel arbitration was filed by the original participating manufacturers, the defendants Philip Morris USA, Inc., R.J. Reynolds Tobacco Company and Lorillard Tobacco Company. Several of the subsequent participating manufacturers later joined the motion to compel.

[5] "Since shortly after the execution of the agreement, Pricewaterhouse-Coopers, LLP, has been engaged as the independent auditor." *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 789 n.2.

[6] "Participating manufacturers are defined under the agreement as both the subsequent and the original participating manufacturers. Hereinafter, we also will refer to these two groups collectively as the participating manufacturers." *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 789 n.3.

tions to the parties to the agreement, and, finally, to deliver a final payment calculation that explains any changes from the preliminary calculations. In addition, the agreement provides a detailed set of rules to be followed by the independent auditor in calculating the annual payments. Specifically, the agreement directs the independent auditor to take a base amount owed by the participating manufacturers and apply various adjustments, offsets and reductions. In performing this calculation, the independent auditor is to apply these adjustments, offsets and reductions sequentially over thirteen steps. If any given step does not apply, the total from the prior step is then carried forward to the next step.

"The sixth step in the process is a downward adjustment to the annual payment that is to be applied if the participating manufacturers lose market share, in the calendar year for which the payment is being calculated, to manufacturers that did not participate in the agreement.[7] The agreement conditions the application of this nonparticipating manufacturer adjustment on a determination by a nationally recognized firm of economic consultants that the disadvantages caused by the agreement's provisions were a significant factor in the loss of market share.

"The agreement [in § IX (d) (2) (B)] also provides, however, that each settling state can avoid individually the application of the downward nonparticipating manufacturer adjustment if it has enacted a 'qualifying statute' that is in full force and effect during the calendar year on which the payment is based and the state diligently enforced the statute during that calendar year.

[7] "Generally, there is a market share loss, under the agreement, if the aggregate market share of all participating manufacturers, in the calendar year immediately preceding the year in which the payment is due, is more than 2 percent less than the market share for all participating manufacturers in 1997." *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 790 n.4.

A qualifying statute is defined [in § IX (d) (2) (E) of the agreement] as a 'statute, regulation, law and/or rule . . . that effectively and fully neutralizes the cost disadvantages that the [p]articipating [m]anufacturers experience vis-á-vis [nonparticipating manufacturers] within such [s]ettling [s]tate as a result of the provision of this [a]greement.' The agreement contains a model qualifying statute that has been in substantial form enacted by all of the settling states, including Connecticut.[8] If a settling state is exempt from the nonparticipating manufacturer adjustment, that portion of the adjustment that would have been applied to reduce the annual payment to that particular state is reallocated pro rata to the nonexempt settling states." Id., 789–91.

In calculating amounts owed by the participating manufacturers for 2003, the independent auditor declined to apply the nonparticipating manufacturer adjustment for that year, despite the participating manufacturers' request to the contrary. The independent auditor did not apply a nonparticipating manufacturer adjustment to reduce the participating manufacturers' annual payments based on a representation by the national association of attorneys general that all settling states had enacted qualifying statutes and that these statutes were in full force and effect since their effective date. The independent auditor did not make a finding as to whether Connecticut, or any of the settling states, had diligently enforced their qualifying statutes during 2003. See id., 791–92.

---

[8] The "qualifying statute" was enacted in Connecticut as No. 00-208 of the 2000 Public Acts, the provisions of which are codified at General Statutes §§ 4-28h, 4-28i and 4-28j. "In operation, this statute attempts to neutralize the participating manufacturers' cost disadvantage as compared to nonparticipating manufacturers by requiring the nonparticipating manufacturers to make payments into an escrow account based on their sales in Connecticut. See General Statutes § 4-28i (a) (2)." *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 790 n.5.

As a result, some of the defendants filed a motion to compel arbitration of this dispute concerning the independent auditor's failure to apply a nonparticipating manufacturer adjustment to the 2003 annual payments. The trial court granted the defendants' motion to compel arbitration and the state appealed. In *Philip Morris, Inc.*, this court concluded that "[i]n sum, the agreement provides that the independent auditor, in calculating the annual payments due under the agreement, is not only empowered to, but must make an initial determination regarding the applicability of any adjustments, including the nonparticipating manufacturer adjustment. Any challenge as to whether the independent auditor's initial determination was, in fact, correct, under the circumstances, is an issue that the agreement reserves for binding arbitration." Id., 807–808. We therefore affirmed the trial court's order requiring the parties to submit to arbitration their dispute regarding the nonparticipating manufacturer adjustment.

While the appeal in *Philip Morris, Inc.*, was pending before this court, the state filed a motion for a declaratory ruling in the trial court asking that court to determine that the amount received by the state under the agreement in 2004 is not subject to being reduced by the nonparticipating manufacturer adjustment for 2003 because Connecticut diligently had enforced its qualifying statute in 2003. After we issued our decision in *Philip Morris, Inc.*, the defendants filed a motion to compel arbitration of the dispute between the parties regarding the independent auditor's refusal to apply the nonparticipating manufacturers' adjustment to the 2006 annual payment by the participating manufacturers. In a well reasoned, thirty-four page opinion, the trial court granted the defendants' motion to compel arbitration and determined that this court's decision in *Philip Morris, Inc.*, was controlling. In its decision, the trial court

concluded that the disputes regarding both the 2004 and 2006 annual payments were arbitrable. This appeal followed.

On appeal, the state asserts that the trial court misconstrued the scope of this court's decision in *Philip Morris, Inc.* Specifically, the state asserts that in that case, we did not address the arbitrability of the state's diligent enforcement of its qualifying statute, and that the issue of diligent enforcement should be decided by the trial court. In response, the defendants claim that the trial court properly determined that our decision in *Philip Morris, Inc.*, is controlling and requires the arbitration of the parties' dispute concerning the application of the nonparticipating manufacturers' adjustment to the payments by participating manufacturers, including the state's diligent enforcement defense to that adjustment. We agree with the defendants.

We begin by setting forth the principles that guide our resolution of the present appeal. "[A]rbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes . . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so. . . . *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 72, 856 A.2d 364 (2004). The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 608, 577 A.2d 709 (1990). The parties' intent is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where

it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . *Goldberg* v. *Hartford Fire Ins. Co.*, 269 Conn. 550, 559, 849 A.2d 368 (2004).

"Although the intention of the parties typically is a question of fact, if their intention is set forth clearly and unambiguously, it is a question of law. *Levine* v. *Advest, Inc.*, 244 Conn. 732, 746–47, 714 A.2d 649 (1998); *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 92, 709 A.2d 540 (1998); see also *Paine Webber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 190, 585 A.2d 654 (1991) (parties' intent is not question of fact where the contract language is definitive). Because neither party argues that the language of the agreement's arbitration provision is ambiguous, our review of the parties' intent is plenary. See *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290–91, 838 A.2d 135 (2004)." (Internal quotation marks omitted.) *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 796–98.

As we did in *Philip Morris, Inc.*, we begin with the pertinent language of the agreement. Section VII (a) of the agreement provides in relevant part that the Superior Court, which entered the consent decree, retains "exclusive jurisdiction for the purposes of implementing and enforcing this [a]greement . . . and . . . except as provided in . . . [§] XI (c) . . . [it] shall be the only court to which disputes under this [a]greement . . . are presented . . . ." Accordingly, § XI (c) establishes an exception to the Superior Court's otherwise exclusive jurisdiction over the agreement's implementation and enforcement. Section XI (c) provides for binding arbitration before a panel of three arbitrators, each of whom shall be a former federal judge, of "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations

made by, the [i]ndependent [a]uditor . . . including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX (j) . . . ."

In the present appeal, the state claims that the issue of whether it diligently has enforced its qualifying statute does not fall within this arbitration provision and therefore is not controlled by our decision in *Philip Morris, Inc.* Specifically, the state claims that the diligent enforcement provision does not fall within the "arising out of or relating to" calculations or determinations made by the independent auditor pursuant to § XI (c) of the agreement because it is not a determination to be made by the independent auditor, but, rather, is information to be used by the independent auditor in making its determination. We disagree with the state, and, instead, agree with the trial court that the current dispute is "an essentially identical dispute" to that which this court decided was arbitrable in *Philip Morris, Inc.*

In *Philip Morris, Inc.*, we concluded that "[a]lthough the agreement thus limits the subject matter of the disputes that are arbitrable, it employs broad language in defining the scope of the disputes that fall within that subject matter. Specifically, the arbitration provision provides that '[a]ny dispute, controversy or claim *arising out of or relating to*' the independent auditor's calculations and determinations is arbitrable. . . . Section XI (a) (1) of the agreement provides in relevant part that the independent auditor 'shall calculate and determine the amount of all payments owed pursuant to this agreement, [and] the adjustments . . . thereto . . . .' Pursuant to § XI (a) (1), the independent auditor calculated the annual payments owed by the participating manufacturers for 2003 to the settling states. As we have discussed previously herein, § IX (j) describes the

steps that the independent auditor must take in calculating the participating manufacturers' annual payments and the sixth step in that process is the application of the nonparticipating manufacturer adjustment. Thus, the independent auditor, in calculating the annual payments, had to determine whether to apply that adjustment. Accordingly, we conclude that the underlying dispute over the independent auditor's decision not to apply the adjustment falls within the scope of the arbitration provision because it directly involves a determination of the independent auditor. Moreover, this dispute also arises out of or relates to the independent auditor's calculation of the annual payments because its determination not to apply the nonparticipating manufacturer adjustment resulted in it calculating higher annual payments than if it had determined that the adjustment should apply." (Emphasis in original.) *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 798–99.

As we have explained previously herein, § IX (d) (2) (B) of the agreement provides that a state can avoid the application of the nonparticipating manufacturer adjustment if it has enacted a qualifying statute that is in full force and effect during the calendar year and the state diligently has enforced the statute during the calendar year. Accordingly, the determination of whether a state has diligently enforced its qualifying statute is central to the independent auditor's determination of whether to apply the nonparticipating manufacturer adjustment because diligent enforcement precludes the application of the adjustment. We conclude, therefore, that the determination of whether a state has diligently enforced its qualifying statute arises out of or relates to the independent auditor's calculations and determinations, including the application of an adjustment, in this case, the nonparticipating manufacturer adjustment. The present dispute between the

parties therefore is subject to arbitration under the agreement.

Our conclusion is supported by the decisions of *all* the other jurisdictions that have considered whether the agreement requires arbitration of the diligent enforcement determination. Many of these courts have cited our decision in *Philip Morris, Inc.*, as supporting arbitration of the disputed issue in the present case in their jurisdictions. See, e.g., *State* v. *Lorillard Tobacco Co.*, 1 So. 3d 1, 14 (Ala. 2008) ("both the language and the structure of the agreement compel arbitration of the dispute regarding the [s]tate's diligent enforcement of its qualifying statute"); *State* v. *Philip Morris, Inc.*, 179 Md. App. 140, 155, 944 A.2d 1167 ("[a]fter giving effect to each clause and construing the [agreement] in its entirety, arbitration [of a dispute involving diligent enforcement] is mandatory"), cert. denied, 405 Md. 65, 949 A.2d 653 (2008); *Commonwealth* v. *Philip Morris, Inc.*, 448 Mass. 836, 844–45, 864 N.E.2d 505 (2007) ("[t]he language of the settlement agreement arbitration clause thus plainly and unambiguously encompasses the present dispute [involving the diligent enforcement determination]"); *State ex rel. King* v. *American Tobacco Co.*, 145 N.M. 134, 138, 194 P.3d 749 (App. 2008) ("under the plain text of the [agreement], the issue of the [s]tate's diligent enforcement arises out of and relates to the [a]uditor's determination of whether to allow the [nonparticipating manufacturers'] [a]djustment"); *State* v. *Philip Morris, Inc.*, 8 N.Y.3d 574, 580, 869 N.E.2d 636, 838 N.Y.S.2d 460 (2007) ("[b]y using the expansive words 'any' and 'relating to,' [the agreement] makes explicit that all claims that have a connection with the [i]ndependent [a]uditor's calculations and determinations are arbitrable"); *State ex rel. Stenhjem* v. *Philip Morris, Inc.*, 732 N.W.2d 720, 731 (N.D. 2007) ("plain and unambiguous language of the settlement agreement requires arbitration of the parties' dispute

[regarding application of the diligent enforcement exemption to the nonparticipating manufacturer adjustment]"); *State* v. *Philip Morris USA, Inc.*, 183 Vt. 176, 185, 945 A.2d 887 (2008) ("[b]ecause diligent enforcement is a required component of the auditor's payment calculations, it arises out of or relates to the auditor's calculations and determinations, and is therefore subject to arbitration").

The state asserts that the parties to the agreement intended that a court should make the determination whether a state diligently has enforced its qualifying statute. In support of its claim, the state relies on the general jurisdiction and enforcement provisions of the agreement. We disagree. In *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 806–807, we concluded that "the agreement requires that the independent auditor calculate the annual payments and, in performing those calculations, the agreement further requires that the independent auditor determine, based on the language of the agreement and the information it has been provided, whether to apply the nonparticipating manufacturer adjustment. . . . [T]he independent auditor is tasked, under [§ XI (d) (2) of] the agreement, with the responsibility of making determinations as to when a particular adjustment applies." We cannot find, and the state has not pointed to, any specific language in the agreement that indicates that the parties intended for the determination of whether a state diligently has enforced the qualifying statute to be treated differently than any other determination with which the independent auditor is tasked under the agreement.[9]

---

[9] At oral argument in this court, counsel for the state admitted that there is no specific language in the agreement that supports the state's contention. He relied, instead, on the "overall structure" of the agreement. In light of the broad arbitrability provision in the agreement, this reliance is wholly unfounded.

The state also contends that our decision in *Philip Morris, Inc.*, is not controlling because that opinion addressed the auditor's "initial" determination of the annual payment, which had been made without a determination as to whether the state diligently had enforced its qualifying statute. In support of its claim, the state asserts that this court's use of the term "initial determination"; *State* v. *Philip Morris, Inc.*, supra, 279 Conn. 807; indicated that the auditor's determination was subject to further adjustment based on a finding by a *trial court* as to whether the state diligently had enforced its qualifying statute. We disagree because there is, once again, no language in the agreement that supports this claim. In addition, the state is improperly placing inordinate emphasis on our use of the term "initial." We concluded in *Philip Morris, Inc.*, that "the parties to the agreement intended the independent auditor to make the initial determinations regarding the applicability of adjustments to the annual payments. . . . Any challenge as to whether the independent auditor's initial determination was, in fact, correct, under the circumstances, is an issue that the agreement reserves for binding arbitration." Id., 807–808. Our use of the term "initial determination" in that case referred to the auditor's determination based on all relevant factors, a determination that subsequently could be challenged only through arbitration. Moreover, our reasoning in that appeal clearly is applicable to *all* determinations by the auditor, whether initial or final. The state's contentions in the present appeal are both unsupported by the text of the agreement and inconsistent with our reasoning in *Philip Morris, Inc.*

The judgment is affirmed.

In this opinion the other justices concurred.