This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36199**

**STATE OF NEW MEXICO ex rel. HECTOR H. BALDERAS, Attorney General of the State of New Mexico,**

      Plaintiff-Appellant,

v.

**PHILIP MORRIS, USA, INC.; R.J. REYNOLDS TOBACCO COMPANY; COMMONWEALTH BRANDS, INC.; COMPANIA INDUSTRIAL DE TOBACOS MONTE PAZ, S.A.; DAUGHTERS & RYAN, INC.; JAPAN TOBACCO INTERNATIONAL USA, INC.; KING MAKER MARKETING, INC.; KRETEK INTERNATIONAL INC.; LIGGETT GROUP, INC.; P.T. DJARUM; PETER STOKKEBYE TOBAKSFABRIK A/S; SANTA FE NATURAL TOBACCO COMPANY, INC.; SHERMAN'S 1400 BROADWAY N.Y.C. INC.; TOP TOBACCO, L.P.; and VON EIKEN GROUP,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

Orrick, Herrington & Sutcliffe LLP
Robert M. Loeb
Washington, DC
Elizabeth R. Moulton
Menlo Park, CA

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Andrew G. Schultz
Albuquerque, NM

Greenberg Traurig LLP
Elli Leibenstein
Paul T. Fox
Gregory E. Ostfeld
Chicago, IL

for Appellee R.J. Reynolds Tobacco Company

Montgomery & Andrews, P.C.
Victor R. Ortega
Sharon T. Shaheen
Santa Fe, NM

Arnold & Porter Kaye Scholer LLP
Stewart Aaron
Alexander Shaknes
New York, NY

for Appellees Philip Morris USA, Inc. and Sherman's 1400 Broadway N.Y.C. Inc.

Brownstein Hyatt Farber Schreck, LLP
Harold D. Stratton Jr.
Albuquerque, NM

for Appellees Commonwealth Brands, Inc.; Compania Industrial de Tabacos Monte Paz, S.A.; Daughters & Ryan, Inc.; Japan Tobacco International U.S.A., Inc.; King Maker Marketing, Inc.; Kretek International, Inc.; Liggett Group, Inc.; P.T. Djarum; Peter Stokkebye Tobaksfabrik A/S; Top Tobacco, L.P.; and Von Eiken Group

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**    The State of New Mexico (State) appeals the district court's decision granting Appellees' motion to compel arbitration, arguing that the district court erred in applying *State ex rel. King v. American Tobacco Co.*, 2008-NMCA-142, 145 N.M. 134, 194 P.3d 749, as the law of the case. For the reasons that follow, we affirm. As the parties are familiar with the facts and procedural posture of this case, we include only those facts and law necessary to decide the merits of the State's appeal.

**BACKGROUND**

**{2}** In 1997 the State filed suit against various tobacco manufacturers, seeking damages for the manufacturers' acts that resulted in deleterious health effects on New Mexico residents. Many other states filed similar lawsuits against the manufacturers, and in 1998 the State and fifty-one other states and territories (the Settling States) entered into a Master Settlement Agreement (MSA) with certain tobacco manufacturers to resolve the litigation. Under the MSA, the Settling States agreed to release their state claims relating to the use or sale of the participating tobacco manufacturers' (PMs) tobacco products, and in exchange, the PMs agreed to restrictions on the marketing of their products and to make payments to the Settling States.

**{3}** The MSA requires that rather than make individual payments to each Settling State, the PMs make a single payment to an independent auditor who then determines the amount each Settling State is entitled to receive and allocates the money accordingly. A Settling State's payment may be reduced, however, by a non-participating manufacturer adjustment (NPM Adjustment), which allows for payment reductions or eliminations if the market share of non-participating manufacturers in a given year increases more than two percent from the base year of 1997, and an independent economic consulting firm determines that the MSA is a significant factor contributing to the PMs' market share loss. However, if an individual state can prove that it "diligently enforced" a statute imposing similar payment obligations on non-participating manufacturers, that state is entitled to keep the amount that the PMs would have otherwise recovered through the NPM Adjustment. Once a state proves that it is entitled to retain its portion of the allocated payments, the auditor must then reallocate the NPM Adjustment payment reduction among the Settling States that fail to meet the diligent enforcement requirement.

**{4}** The PMs were initially denied a NPM Adjustment for the year 2003, and the PMs filed a motion to compel the State to participate in arbitration. The district court granted the motion, concluding the plain language of the MSA required that the parties resolve the dispute in a single, nationwide arbitration. The State appealed, and in *American Tobacco Co.*, we considered two issues: "(1) whether the district court erred in granting the motion to compel arbitration based on the text of the MSA's arbitration clause; and (2) whether the district court erred in referring the matter to a nationwide arbitration involving other states, as opposed to a local arbitration based in New Mexico." 2008-NMCA-142, ¶ 5. We affirmed the district court, holding that the plain language of the MSA requires the parties to arbitrate the State's diligent enforcement claim challenging the NPM Adjustment and that the MSA supports the district court's decision to compel arbitration "before a nationwide panel." *Id.* ¶¶ 17, 19.

**{5}** Following our mandate in *American Tobacco Co.*, the parties participated in arbitration, where the panel determined that the State had failed to demonstrate diligent enforcement, resulting in the application of the NPM Adjustment to the payment due to the State. While the arbitration panel was deciding the 2003 NPM Adjustment dispute,

several Settling States entered into a "term sheet" agreement with the PMs, resolving all NPM Adjustment disputes between those states and PMs until 2012.

**{6}**     Many of the Settling States who had not otherwise resolved their dispute with the PMs proceeded to the matter of calculating and allocating the 2004 NPM Adjustment, and in doing so, created a stipulation governing the 2004 NPM Adjustment arbitration. Seeking to "avoid further protracted litigation and allow the [a]rbitration to proceed promptly," parties to the stipulation agreed to allow the arbitration to proceed before two three-person panels, one consisting of Judges Pro, Robertson, and Birch, and the other consisting of Judges Pro, Robertson, and Legg. According to the stipulation, only one of the two panels was to hear each state-specific hearing, but common case hearings dealing with "pre-hearing motions, discovery disputes, and any other disputed issues" involving all or several states are held in front of members of both panels. However, decisions on disputed issues were not to be made by the members of both panels, and instead were to be "issued independently by each [p]anel, with each [p]anel's decision applying to those [s]tates over whose state-specific hearings such [p]anel presides." New Mexico did not participate in the 2004 NPM Adjustment arbitration or in the creation of the stipulation.

**{7}**     In September 2016 Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and other PMs, filed a motion seeking to enforce the arbitration provision of the MSA, specifically requesting that New Mexico join the ongoing 2004 NPM Adjustment arbitration that had already been initiated with the Settling States who had not otherwise resolved their dispute with the PMs. The PMs argued that the 2004 NPM Adjustment dispute involved the same MSA agreement, the same arbitration clause, and the same issues as those presented in *American Tobacco Co.* and urged the district court to apply the law of the case doctrine to compel the State to arbitrate the matter. The State argued that the law of the case doctrine should not apply because forcing arbitration that is noncompliant with the MSA would render an unjust result, because there had been changes in the applicable law, and because the relevant facts had changed.

**{8}**     After the matter was briefed and argued, the district court concluded that *American Tobacco Co.* "held explicitly[] that New Mexico was obligated to participate in multistate arbitration on the NPM dispute and related issues" and, concluding that the *American Tobacco Co.* holding was binding, applied it to the case at hand. As a result, the district court granted Appellee's motion and ordered the State to "join the pending multistate arbitration to arbitrate its dispute with the PMs concerning the 2004 NPM Adjustment and the State's diligent enforcement claim." The State appealed.

## DISCUSSION

**{9}**     The State argues that the law of the case doctrine is inapplicable because the facts and law that existed at the time of our decision in *American Tobacco Co.*, 2008-NMCA-142, have changed. First, the State argues that the selection process for arbitrators utilized in the ongoing 2004 NPM Adjustment arbitration violates the MSA. Second, the State contends that the participants to the arbitration are no longer

numerous enough to equate to "nationwide arbitration" as contemplated by *American Tobacco Co.* and that it did not agree to arbitrate alongside other states. Third, the State argues that the United States Supreme Court decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), disallows the kind of "consolidated arbitration," that *American Tobacco Co.* called for.

**{10}** "Whether law of the case applies, as well as how it applies, are questions of law subject to de novo review." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816. To the extent our determination requires interpretation of the MSA, our review is de novo. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803.

**{11}** "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation" and precludes relitigation of an issue. *Cordova v. Larsen*, 2004-NMCA-087, ¶ 10, 136 N.M. 87, 94 P.3d 830 (internal quotation marks and citation omitted). "[The l]aw-of-the-case doctrine is a matter of precedent and policy; it is a determination that, in the interests of the parties and judicial economy, once a particular issue in a case is settled it should remain settled." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 40, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted). The doctrine is also "discretionary and flexible"; however, *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, and the appellate courts will not apply it to uphold a clearly incorrect decision, *Trujillo*, 1998-NMSC-031, ¶ 40; or "where doing so might result in a manifestly unjust decision and where the essential facts have been altered by a substantial change in the evidence. *Moya v. Catholic Archdiocese of N.M.*, 1988-NMSC-048, ¶ 10, 107 N.M. 245, 755 P.2d 583; *see Reese v. State*, 1987-NMSC-110, ¶ 4, 106 N.M. 505, 745 P.2d 1153 ("[W]hen we conclude that a former decision is erroneous, and we still have the opportunity to correct it as affecting those parties whose interests are concerned in the original ruling, we should apply the law of the land rather than the law of the case." (internal quotation marks and citation omitted)).

**{12}** Turning to our decision in *American Tobacco Co.*, we concluded that the dispute was subject to arbitration and that the text of the MSA supports the "order compelling arbitration of th[e] dispute before a nationwide panel." 2008-NMCA-142, ¶¶ 14, 19. In reaching these decisions, we relied on a reading of the plain text of the MSA, as well as the "compelling logic [of] having [the] disputes handled by a single arbitration panel, . . . [s]ince the granting of an exemption by one settling state will automatically lead to the reallocation of its allocated portion of the NPM adjustment to all other non-exempt settling states." *Id.* ¶ 19 (internal quotation marks and citation omitted).

## I.      The Selection Process for Arbitrators Does Not Violate the MSA.

**{13}** We begin by evaluating whether the process for selecting arbitrators established for the 2004 NPM Adjustment constitutes a substantial change in the evidence, *see Moya*, 1988-NMSC-048, ¶ 10, including whether it does not comply with the MSA, whether the State cannot be said to have agreed to participate in the arbitration as it

now exists, and whether it is so changed from MSA-compliant process used in *American Tobacco Co.* that the law of the case doctrine is inapplicable.

**{14}** The MSA provides that disputes such as this one "shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator." The stipulation governing the 2004 NPM Adjustment arbitration panel creates "two arbitration panels," and provides that "[e]ach state-specific hearing to determine whether the [s]tate in question diligently enforced the provisions of its [q]ualifying [s]tatute during 2004 . . . shall be presided over by one of the two [p]anels," which shall then "issue an arbitration determination and award resolving that dispute with respect to such [s]tate." The panels are comprised of three judges,[1] two of whom are members of both panels while the third judge—the one chosen by the PMs—differs depending on the panel in question. According to PMs, "a dispute arose among the PMs regarding the selection of the PMs' arbitrator. . . result[ing] in two competing arbitrator selections by the PMs." While all members of both panels must attend common case hearings, pre-hearing motion hearings, and discovery disputes, decisions on any disputed matters "shall be issued *independently by each [p]anel*, with each [p]anel's decision applying to those [s]tates over whose state-specific hearing such [p]anel presides." (Emphasis added.)

**{15}** The process for choosing an arbitration panel and for arbitrating disputes before the panel that is contained in the plain language of the stipulation governing the 2004 NPM Adjustment arbitration does not conflict with the requirements of the MSA. Nothing in the MSA requires that a single panel consider every state's dispute with the PMs; it requires only that any panel hearing a dispute be composed of three arbitrators who are chosen according to certain procedures. The State's challenge is limited to the number of arbitrators, and it neither challenges the qualifications of the chosen panel judges, nor proffers evidence to suggest that the arbitrators were selected in a manner contrary to the MSA. The State's repeated assertion that the arbitration stipulations created a panel of four arbitrators whose members were disproportionately selected by the PMs is not supported by the record. The stipulation explicitly provides that only a panel of three will decide disputed issues. Of those three panel members, the PMs will have chosen only one panel member, regardless of which panel hears the dispute. While there are four arbitrators named as panel members in the stipulation, and the PMs did choose two of those four, such circumstances are not inconsistent with the requirements of the MSA where, as here, the decision-making panel that would arbitrate the State's dispute is to be comprised only of three arbitrators who were selected according to the MSA's procedures.

**{16}** We conclude that the arbitration panels created in the 2004 NPM Adjustment arbitration stipulations are not inconsistent with the MSA's requirements, and the State therefore cannot disclaim its obligation to arbitrate its dispute with the PMs by asserting that it did not agree to arbitrate in such a manner. We also conclude that there is no

---

[1]The State does not assert that these judges fail to meet the MSA's requirement that they be a former Article III federal judge.

evidence the procedure used to create an arbitration panel for the State's 2004 NPM Adjustment dispute is so different from the procedure followed in *American Tobacco Co.* that we should decline to apply the law of the case doctrine.

## II.  "Nationwide" Arbitration Does Not Require a Specific Number of Participants

**{17}**   Next, we address the State's contention that the facts have been altered such that the number of participants in the current arbitration at issue here is so diminished that it no longer constitutes "nationwide arbitration" as contemplated in *American Tobacco Co. See Moya*, 1988-NMSC-048, ¶ 10 (holding that appellate courts will not apply the law of the case if "essential facts have been altered by a substantial change in the evidence"). The holding in *American Tobacco Co.*, that "the text of the MSA supports the district court's order compelling arbitration of this dispute before a nationwide panel[,]" is an acknowledgement of the "nationwide and unitary" nature of the MSA and is based largely on "the spirit and the plain language of the MSA." 2008-NMCA-142, ¶ 19 (alteration, internal quotation marks, and citation omitted). Noting that "the granting of an exemption by one settling state will automatically lead to the reallocation of its allocated portion of the NPM adjustment to all other non-exempt settling states," we agreed with the conclusion of other states that a cohesive, "nationwide" arbitration approach was likely to "ensure[] fairness for all parties to the MSA." *Id.* (internal quotation marks and citations omitted).

**{18}**   The State focuses on the term "nationwide" that we used to characterize the arbitration in *American Tobacco Co.* and now seeks to use it to narrow our decision, ignoring the crux of our reasoning. *Cf. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22 (emphasizing that the entire opinion constitutes the law of the case, and elevating the importance of the opinion's meaning over doubt or ambiguity in the language of the mandate). The State implicitly asks us to acknowledge that some unknown percentage of the Settling States—larger than exists in this case—is necessary to constitute "nationwide" arbitration. Such a condition is neither required by the holding of *American Tobacco Co.* nor supported by the language of the MSA.

**{19}**   Neither the language of the MSA nor the intent of the parties suggests that the participation of a certain number of Settling States was required to render the arbitration a "nationwide" arbitration and the number of participants was not relevant to our decision in *American Tobacco Co.* Nothing relevant to our analysis, either in the language of the MSA or the evidence of the parties' intent, has changed since we issued *American Tobacco Co.* Although the State is correct in its assertion that there are far fewer states whose controversies with the PMs remain subject to the MSA, that fact is irrelevant for purposes of applying the *American Tobacco Co.'s* holding to this case. That other Settling States have entered into a separate settlement agreement to address the "dispute[s], controvers[ies] or claim[s] arising out of or relating to [the] calculation[]" of the amounts due to those Settling States to avoid annually rehashing arbitration disputes like this one does not extinguish the State's contracted-for

responsibilities under the MSA or render the MSA inapplicable to the State. *American Tobacco Co.,* 2008-NMCA-142, ¶¶ 7, 15 (internal quotation marks and citation omitted).

**{20}** The State also argues that it did not agree to have this matter arbitrated alongside other states in a "nationwide" arbitration. Its claim, however, is not supported by the record. The record is replete with evidence that the State voluntarily and knowingly entered into negotiations with the PMs. The result of those negotiations was the MSA, which included a large number of other states who had similar disputes with those same PMs. The State entered into the MSA knowing that the MSA contained an arbitration agreement and that dozens of other states were also entering into the agreement. *See Ballard v. Chavez,* 1994-NMSC-007, ¶ 8, 117 N.M. 1, 868 P.2d 646 ("[E]ach party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby[.]"). As such, when the State entered into the MSA, it should have been aware, based on the language of the agreement, that there was a possibility—if not likelihood—that it would be required to arbitrate disputes alongside the other Settling States. We therefore conclude that the State's arguments against "nationwide" arbitration are unpersuasive. The issues the State raises were settled by *American Tobacco Co.,* which is the law of the case.

### III. As the Arbitration Is Not a Class Arbitration, *Stolt-Nielsen, S.A.* Is Inapplicable

**{21}** Next we turn to the State's argument that we should not apply the holding in *American Tobacco Co.* to this case under the law of the case doctrine because the United States Supreme Court's opinion in *Stolt-Nielsen S.A.*, precludes the nationwide arbitration required under *American Tobacco Co.* In *Stolt-Nielsen S.A.*, the Court held that "a party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." 559 U.S. at 664 (emphasis omitted); *Lyndoe v. D.R. Horton, Inc.*, 2012-NMCA-103, ¶ 24, 287 P.3d 357 (same).

**{22}** The State argues that the "nationwide arbitration" concept adopted in *American Tobacco Co.* is the functional equivalent of class arbitration, that it has not agreed to have the determination of its diligence consolidated with the PMs' disputes with other states, and that *Stolt-Nielsen S.A.*, therefore precludes application of *American Tobacco Co.* We rejected a similar argument in *Lyndoe*, 2012-NMCA-103. In *Lyndoe*, we considered the propriety of the district court's order consolidating all arbitrations between the defendant, a home builder, and the plaintiffs, the owners of homes built and sold by the defendant. *Id.* ¶ 1. Relying on *Stolt-Nielsen, S.A.*, the home builder defendant in *Lyndoe* argued that "the district court fundamentally changed the nature of the arbitration to such a degree that it cannot be presumed the parties consented to it." *Id.* ¶ 24 (internal quotation marks and citation omitted). We rejected the defendant's comparison of the multi-party, consolidated arbitration ordered by the district court to a class arbitration, noting, "in a class arbitration, the arbitrator's award may adjudicate the rights of absent parties as well as the rights of named parties. This cannot occur in the

consolidated arbitration ordered in this case . . . because only named parties with arbitration agreements will participate." *Id.* ¶ 26 (alteration, internal quotation marks, and citation omitted).

**{23}** Just as in *Lyndoe*, the arbitration contemplated in this case is not class arbitration. Only named parties who were parties to the MSA and its arbitration clause will participate, and the arbitration panel will not adjudicate the rights of absent parties. The State's reliance on *Stolt-Nielsen, S.A.* is misplaced.

**CONCLUSION**

**{24}** We affirm.

**{25} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**MEAGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**