COLDWELL BANKER MANNING REALTY, INC.
*v.* CUSHMAN AND WAKEFIELD OF
CONNECTICUT, INC., ET AL.
(SC 18222)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 16—officially released October 6, 2009

*Gwendolyn S. Bishop*, with whom were *P. Timothy Smith* and, on the brief, *Paul W. Smith*, for the appellant (plaintiff).

*Steven M. Greenspan*, with whom, on the brief, was *Erik H. Beard*, for the appellees (defendants).

*Opinion*

ZARELLA, J. This is one of two separate appeals[1] arising out of a real estate transaction involving the plaintiff, Coldwell Banker Manning Realty, Inc. (Coldwell Banker), the named defendant, Cushman and Wakefield of Connecticut, Inc. (Cushman), and Computer Sciences Corporation (CSC).[2] In the present appeal, Coldwell Banker claims that the trial court improperly concluded that the decision of the Greater Hartford Association of Realtors, Inc.[3] (association), to dismiss as untimely Coldwell Banker's request for

---

[1] Our decision in the second appeal, released on the same date as this decision, is *Coldwell Banker Manning Realty, Inc.* v. *Computer Sciences Corp.*, 293 Conn. 628, 980 A.2d 812 (2009).

[2] Coldwell Banker also named Joel M. Grieco and Robert E. Kelly as defendants. CSC was not named as a defendant in the present action. We refer to Cushman, Grieco and Kelly collectively as the defendants. We refer to Cushman, Grieco or Kelly individually by name.

[3] The Greater Hartford Association of Realtors, Inc., is a voluntary, professional association of licensed real estate agents and brokers serving the greater Hartford area.

arbitration of claims against Cushman constituted an arbitration award for purposes of General Statutes § 52-417[4] and, therefore, that the court's confirmation of the alleged award and its subsequent dismissal of Coldwell Banker's claims for lack of subject matter jurisdiction also were improper. Coldwell Banker further contends that the trial court improperly concluded that its request for arbitration (1) was unrestricted, (2) applied to the two individual defendants, namely, Joel M. Grieco and Robert E. Kelly, who served as Cushman's agents during the real estate transaction, and (3) encompassed several claims that, according to Coldwell Banker, were not contained in its request. Cushman responds that the trial court properly determined that the association's dismissal of the arbitration request as untimely constituted an arbitration award subject to confirmation by the trial court and, therefore, that the court lacked subject matter jurisdiction to consider Coldwell Banker's claims. It also contends that Coldwell Banker's arbitration request was unrestricted and, consequently, applied to Grieco and Kelly, and to both the contract *and* noncontract claims. Cushman finally contends that the trial court's judgment may be affirmed on the alternate ground that, even if this court concludes that the award applies only to the contract claims against Cushman, the trial court had no jurisdiction over the noncontract claims and the claims against Grieco and Kelly because those claims are exclusively arbitrable and there has been no arbitration. We reverse the judgment of the trial court.

---

[4] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

The following facts and procedural history are relevant to our resolution of this appeal. On March 15, 2000, Coldwell Banker entered into a contract with CSC to serve as its exclusive realtor and to assist in the purchase, lease or exchange of certain real property in East Hartford known as Riverview Square. After CSC viewed the property, it directed Coldwell Banker to proceed with negotiations to lease space at the location. On the basis of its contract with CSC and CSC's interest in the property, Coldwell Banker entered into discussions with the property owner, who expressed a willingness to lease a substantial amount of space to CSC and to pay Coldwell Banker a commission in accordance with its contract with CSC.

Thereafter, CSC contacted Coldwell Banker and requested a meeting to discuss the contract. The meeting was held on April 13, 2000, and also was attended by Cushman's agents, Grieco and Kelly. At the meeting, Grieco and Kelly represented to Coldwell Banker that Cushman had a simultaneous contract with CSC as its sole and exclusive real estate broker and, therefore, that Cushman would be entitled to the commission on any transaction involving Riverview Square that Coldwell Banker might be in the process of negotiating. As a result of the meeting, CSC requested and obtained a new contract pursuant to which the three parties agreed that CSC would be allowed to select either Coldwell Banker or Cushman to represent it in the Riverview Square transaction, with the company selected receiving 80 percent of the commission and the other company receiving 20 percent. CSC selected Cushman, and Cushman allegedly received a commission of approximately $500,000 following completion of the transaction, none of which it shared with Coldwell Banker.

On April 26, 2002, Coldwell Banker filed a complaint against Cushman, Grieco and Kelly. Coldwell Banker asserted six claims against each defendant, including

fraud, violation of a statutory duty, breach of the duty to deal in good faith, interference with contract, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The claims were based on allegations that Cushman, CSC, Grieco and Kelly knowingly had made false representations and statements to Coldwell Banker that CSC had a valid broker contract with Cushman during the time that CSC also had a contract with Coldwell Banker. Coldwell Banker further alleged that it had relied on these representations to its detriment in agreeing to release CSC from its contract and in allowing Cushman to receive the 80 percent commission to which Coldwell Banker was entitled.

On August 14, 2002, the defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, to stay the proceedings pursuant to General Statutes § 52-409[5] pending arbitration of Coldwell Banker's claims. The defendants argued that all of the parties to the action were members of the association in good standing and that language in the arbitration agreement that the association had adopted compelled arbitration of Coldwell Banker's claims.[6]

---

[5] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

[6] In their motion to dismiss or to stay the proceedings, the defendants referred to the following language that the association adopted from the code of ethics of the National Association of Realtors: "In the event of contractual disputes between [realtors] (principals) associated with different firms, arising out of their relationship as [realtors], the [realtors] shall submit the dispute to arbitration in accordance with the regulations of their [b]oard or [b]oards, *rather than litigate the matter.*" (Emphasis in original; internal quotation marks omitted.)

On October 15, 2002, the court, *Sheldon, J.*, granted in part the motion to dismiss and granted the motion to stay Coldwell Banker's "entire action" pending arbitration of certain of its claims. The court determined that all parties were members of the association[7] and thus were required to arbitrate disputes arising out of their relationship as realtors. The court concluded, however, that only two of the six claims against Cushman were arbitrable under the association's bylaws and code of ethics, those being the breach of contract and fraud claims. The court also concluded that the claims against Grieco and Kelly were not arbitrable because, even though the two individual defendants were realtors, they were not parties to the contract between Coldwell Banker, Cushman and CSC. The court thus determined that it retained subject matter jurisdiction over all of the noncontract claims against Cushman and all of the claims against Grieco and Kelly.

Coldwell Banker did not seek to arbitrate its claims against Cushman immediately but chose instead to commence an action against CSC[8] on May 1, 2003, in which it asserted four of the six claims that it had asserted against Cushman, Grieco and Kelly.[9] On June 9, 2005, the court, *Booth, J.*, granted CSC's motion to stay Coldwell Banker's action against CSC pending arbitration of all claims against CSC.[10] On November 1, 2005, Coldwell Banker filed a request for arbitration[11] of its claims

---

[7] In an affidavit dated December 6, 2006, Jeffrey P. Arakelian, chief executive officer of the association, attested that Coldwell Banker, Cushman, Grieco and Kelly were realtors and members of the association in good standing.

[8] CSC was the sole defendant named in that action.

[9] The complaint against CSC alleged fraud, breach of the duty to deal in good faith, breach of contract and violation of CUTPA.

[10] The Appellate Court subsequently granted CSC's motion to dismiss Coldwell Banker's appeal from the trial court's decision granting the motion to stay pending arbitration.

[11] In preparing the arbitration request for submission, Coldwell Banker used a form provided by the association that included the following language: "I request and consent to arbitration through the [a]ssociation in accordance

against CSC, which the association forwarded to its grievance committee.[12] Coldwell Banker crossed out standard language in the request form certifying that the form had been filed "within 180 days" of the closing of the disputed transaction.[13] In a letter dated November 16, 2005, the grievance committee dismissed Coldwell Banker's request for arbitration on the ground that the request had not been timely filed and refunded the $500 arbitration fee that it previously had paid. The grievance committee reasoned that a request for arbitration must be filed within "180 days after the closing of the transaction, if any, or within 180 days after the fact constituting the arbitration matter could have been known in the exercise of reasonable diligence, whichever is later." The grievance committee also noted, however, that Coldwell Banker could appeal from the dismissal of the request for arbitration to the association's board of

---

with the [c]ode of [e]thics and [a]rbitration [m]anual, and I agree to abide by the arbitration award and to comply with it promptly. In the event I do not comply with the arbitration award and it is necessary for any party to this arbitration to obtain judicial confirmation and enforcement of the arbitration award against me, I agree to pay the party obtaining such confirmation the costs and reasonable attorney's fees incurred in obtaining such confirmation and enforcement."

[12] Jeffrey P. Arakelian, chief executive officer of the association, attested in an affidavit that, "[i]n accordance with [§] 42 of the [c]ode of [e]thics and [a]rbitration [m]anual of the National Association of [Realtors] . . . when [the association] receives a request for arbitration, it must be forwarded to the [association's] [g]rievance [c]ommittee. The [g]rievance [c]ommittee has sole responsibility for determining whether . . . a matter is subject to arbitration, including, inter alia, whether it has been submitted within the required time frame and whether the issue relates to a real estate transaction and is properly arbitrable."

[13] The request for arbitration provided in relevant part: "Under the penalties of perjury, I declare that this application and the allegations contained herein are true and correct to the best of my knowledge and belief and this request for arbitration is filed within *180 days* after the closing of the transaction, if any, or within 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later." (Emphasis added.) Coldwell Banker crossed out the first reference to "180 days," which we have emphasized in italics, but did not cross out the second reference to "180 days."

directors and provided a form for this purpose. There-after, Coldwell Banker appealed from the dismissal, but the appeal was denied without further comment.

On December 8, 2005, more than three years after the trial court, *Sheldon, J.*, stayed Coldwell Banker's action against Cushman, Grieco and Kelly, Coldwell Banker filed a request for arbitration of the claims[14] in that action. Coldwell Banker attached to the request copies of the trial court's ruling and the original complaint naming Cushman, Grieco and Kelly as defendants. In a letter that accompanied the request, Coldwell Banker stated that "[t]he request to arbitrate is on limited matters as set forth in the court's ruling." The letter also noted "that the [trial] court ordered arbitration after the 180 day time limit had passed. This request for arbitration, therefore, has been filed after the 180 day time limit has passed. We have amended the request for arbitration to reflect this fact." Coldwell Banker amended the form requesting the arbitration by crossing out language certifying that it had been filed "within 180 days" of the closing of the transaction or of the date on which the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence.[15] On January 18, 2006, the grievance committee dismissed the arbitration request on the ground that it had been filed more than 180 days after the occurrence of the event that had created the dispute or after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence. The grievance committee also refunded the $500 arbitration fee and indicated, as it had done in dismissing the request for arbitration of the claims

[14] As we noted previously, the trial court, *Sheldon, J.*, determined that two of Coldwell Banker's six claims against Cushman were subject to arbitration.

[15] Coldwell Banker crossed out both references to "180 days" in the request for arbitration of the claims against Cushman. In its earlier request for arbitration of the claims against CSC, however, it crossed out only one reference to "180 days." See footnote 13 of this opinion.

against CSC, that Coldwell Banker could appeal from the dismissal. Coldwell Banker, however, did not appeal from the dismissal.

On August 2, 2006, the trial court, *Bryant, J.*, granted the joint motion filed by Cushman, Grieco, Kelly and CSC to consolidate the action against Cushman, Grieco and Kelly with the action against CSC. On December 1, 2006, Coldwell Banker filed motions to lift the stays imposed by the trial court in both actions. Cushman and CSC each filed an application to confirm the alleged arbitration award in their respective cases, and Cushman, Grieco and Kelly filed a motion to dismiss the noncontract claims against Cushman and all of the claims against Grieco and Kelly, contending that the trial court lacked subject matter jurisdiction to hear the claims in light of the arbitration award and the fact that arbitration was the exclusive remedy for settling the parties' dispute. On April 19, 2007, the trial court, *Miller, J.*, granted the applications to confirm the awards and the motion by Cushman, Grieco and Kelly to dismiss the noncontract claims against Cushman and all of the claims against Grieco and Kelly. The court did not act on Coldwell Banker's motions to lift the stays.

In its memorandum of decision, the trial court concluded that the grievance committee's dismissals of Coldwell Banker's requests for arbitration constituted arbitration awards within the meaning of § 52-417 because the dismissals conclusively determined the matters submitted for arbitration, leaving the arbitrator with nothing more to do. Moreover, Coldwell Banker had not contested the dismissals within thirty days. See General Statutes § 52-420 (b).[16] With respect to the scope of the awards and whether they applied to Grieco and Kelly, and to the noncontract claims in the action

---

[16] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

against Cushman, the trial court concluded that, by signing the form provided by the association for submitting the dispute to arbitration, Coldwell Banker had authorized the association to issue a binding determination on any contractual or specific noncontractual claims arising out of the transaction. The court further concluded that Coldwell Banker's requests for arbitration of the disputes with Cushman and CSC were unrestricted, there having been no express agreement limiting the scope of the submissions. Consequently, the trial court concluded that the grievance committee had the power to issue a decision to the full extent of its authority under the arbitration agreement. The trial court summed up its conclusion as follows: "Ultimately, the grievance committee had the authority to issue a binding determination covering all of [Coldwell Banker's] claims against all defendants because all of [Coldwell Banker's] claims against them arose out of either their relationship to each other as realtors or through their tripartite contract to split the realtor commission at issue." This appeal by Coldwell Banker challenging the trial court's confirmation of the award and dismissal of Coldwell Banker's claims against the defendants followed.[17]

I

Coldwell Banker first claims that the trial court improperly concluded that the association's dismissal of its request for arbitration for untimeliness constituted an arbitration award for purposes of § 52-417. Coldwell Banker specifically claims that the dismissal was not an arbitration award because the association refunded the $500 application fee and rejected the sub-

---

[17] Coldwell Banker appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Although Coldwell Banker's action against Cushman, Grieco and Kelly was consolidated with the action against CSC for trial, Coldwell Banker opted to take a separate appeal from the trial court's judgment in each case.

mission without appointing an arbitrator, without collecting evidence and without hearing arguments from the parties. Thus, Coldwell Banker claims that the association never rendered a decision on the merits of its claims. Coldwell Banker also contends that the grievance committee may dismiss a request for arbitration for a variety of reasons that do not preclude a subsequent hearing in court, including that the claim is not subject to arbitration under the association's bylaws, code of ethics and arbitration manual, is too complex for arbitration or involves too little or too much money. Consequently, there is no reason to believe that the grievance committee's dismissal of an arbitration request for untimeliness would have any different effect.

Cushman responds that the dismissal constituted an arbitration award because the grievance committee followed the instructions in the arbitration manual before reaching its decision, and, therefore, an arbitration occurred. Cushman asserts that the arbitration procedure outlined in the manual consists of two distinct steps, the first being a determination as to whether a hearing is warranted and the second being a determination of the merits by a hearing panel, and that the second step was not required in this case because the request for arbitration was time barred. Cushman further asserts that, because Coldwell Banker chose not to exercise its right to appeal from the grievance committee's dismissal, it cannot now object to the award. Cushman contends that, in light of the grievance committee's determination that the claims were substantively arbitrable but time barred, there is nothing left to litigate. It adds that enforcing time limitations promotes the finality of arbitrable disputes and prevents parties from circumventing their contractual obligations. We agree with Coldwell Banker that the dismissal did not constitute an arbitration award.

The parties do not dispute the underlying facts. Accordingly, whether the trial court properly concluded

that the grievance committee's decision constituted an arbitration award subject to confirmation within the meaning of § 52-417 is a question of law that requires our plenary review. See, e.g., *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 665, 894 A.2d 285 (2006); *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 603, 724 A.2d 497 (1999).

We first turn to the governing legal principles. Arbitration is "[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after . . . both parties have an opportunity to be heard." Black's Law Dictionary (6th Ed. 1990). The decision rendered by the arbitrator upon the controversy submitted for arbitration constitutes the arbitration award. The principal characteristic of an arbitration award is its finality as to the matters submitted "so that the rights and obligations of the parties may be definitely fixed." *Local 63, Textile Workers Union of America, C.I.O.* v. *Cheney Bros.*, 141 Conn. 606, 617, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955). In other words, "[a] final award is [o]ne [that] conclusively determines the matter submitted and leaves nothing to be done except to execute and carry out [its] terms . . . ." (Internal quotation marks omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 12, 707 A.2d 725 (1998). The requirement that an award "be mutual, final and definite as between the parties to the arbitration" has been codified at General Statutes § 52-418 (a) (4).[18] *Trumbull* v. *Trumbull Police Local 1745*, 1 Conn. App. 207, 218, 470 A.2d 1219 (1984).

---

[18] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

In determining whether the grievance committee's dismissal of the request for arbitration in this case constituted an award, we are initially guided by article 7 of the association's bylaws,[19] which provides that members in good standing have a duty to arbitrate disputes in accordance with the provisions set forth in article 17 of the code of ethics of the National Association of Realtors,[20] as further defined by the association's code of ethics and arbitration manual. Article 17 of the code of ethics of the National Association of Realtors provides in relevant part: "In the event of contractual disputes or specific non-contractual disputes as defined in [s]tandard of [p]ractice 17-4 between [realtors] (principals) [a]ssociated with different firms, arising out of their relationship as [realtors], the [realtors] shall submit the dispute to arbitration in accordance with the regulations of their [b]oard or [b]oards rather than litigate the matter. . . ." Standard of practice 17-2, which is part of the code of ethics of the National Association of Realtors, further provides realtors with the option of not arbitrating "in those circumstances when all par-

---

[19] Article 7 of the association's bylaws, entitled "Professional Standards and Arbitration," provides:

"Section 1. The responsibility of the [a]ssociation and of [a]ssociation [m]embers relating to the enforcement of the [c]ode of [e]thics . . . and the arbitration of disputes, and the organization and procedures incident thereto shall be governed by the [c]ode of [e]thics and [a]rbitration [m]anual of the [a]ssociation, which by this reference is made a part of these [b]ylaws . . . .

"Section 2. It shall be the duty and responsibility of every [realtor] [m]ember of this [a]ssociation to abide by the constitution, [b]ylaws and [r]ules and [r]egulations of the [a]ssociation . . . and to abide by the [c]ode of [e]thics of the [National Association of Realtors], including the duty to arbitrate controversies arising out of real estate transactions as specified by [a]rticle 17 of the [c]ode of [e]thics, and as further defined in accordance with the procedures set forth in the [c]ode of [e]thics and [a]rbitration [m]anual of this [a]ssociation, as from time to time as amended."

[20] Hereinafter, we refer to the National Association of Realtors by its full name. All references to the "association" are to the Greater Hartford Association of Realtors.

ties to the dispute advise the [b]oard in writing that they choose not to arbitrate before the [b]oard."[21]

Section 41 of the association's arbitration manual, which describes the procedures to be followed by the grievance committee upon receiving a request for arbitration, distinguishes the function of the grievance committee from that of the professional standards committee, explaining that the latter is similar to a court that adjudicates the matters that come before it, whereas the former is similar to a grand jury that "evaluates potentially criminal conduct to determine whether the evidence and testimony presented [warrant] indictment and trial."[22] Section 41 also explains: "The [g]rievance [c]ommittee makes only such preliminary evaluation as is necessary to [determine whether a hearing is war-

[21] Justice Katz observes in her concurring and dissenting opinion that "[a] . . . principle that is of paramount significance in the present case is that, when arbitration is mandated as the *exclusive* method of dispute resolution, a dismissal of a request to arbitrate for failure to file the request within mandatory time limits conclusively determines the controversy." (Emphasis added.) Arbitration, however, is not the exclusive method of dispute resolution in this case, and the issue of whether the 180 day filing period is discretionary or mandatory is an issue that this court must resolve on appeal.

[22] Section 41 of the association's arbitration manual provides in relevant part: "The function of the [g]rievance [c]ommittee is clearly distinguishable from the function of the [p]rofessional [s]tandards [c]ommittee. The [p]rofessional [s]tandards [c]ommittee is similar to a court. The court adjudicates matters that come before it. The [p]rofessional [s]tandards [c]ommittee makes decisions on matters involving ethics or arbitration.

"If the function of the [p]rofessional [s]tandards [c]ommittee is understood as similar to a court, the function of the [g]rievance [c]ommittee can then be understood as similar to that of the grand jury. A grand jury evaluates potentially criminal conduct to determine whether the evidence and testimony presented [warrant] indictment and trial.

"In a similar manner, the [g]rievance [c]ommittee receives ethics complaints and arbitration requests to determine if, taken as true on their face, a hearing is to be warranted. The [g]rievance [c]ommittee makes only such preliminary evaluation as is necessary to make these decisions. While the [g]rievance [c]ommittee has meetings, it does not hold hearings, and it does not decide whether members have violated the [c]ode of [e]thics. The [g]rievance [c]ommittee does not mediate or arbitrate business disputes. . . ."

ranted]. While the [g]rievance [c]ommittee has meet-
ings, it does not hold hearings, and it does not decide
whether members have violated the [c]ode of [e]thics.
The [g]rievance [c]ommittee does not mediate or arbi-
trate business disputes."

Section 42 of the association's arbitration manual
sets forth the procedure for reviewing a request for
arbitration. Section 42 specifically provides that the
committee shall "consider" eleven factors in reviewing
such a request. Among these factors is whether "the
request for arbitration [was] filed within [180] days after
the closing of the transaction, if any, or within [180]
days after the facts constituting the arbitrable matter
could have been known in the exercise of reasonable
diligence, whichever is later . . . ." Other factors to
be considered include whether all necessary parties are
named in the request, whether an arbitrable issue exists,
whether the issue is "too legally complex," whether the
amount in dispute is "too small or too large . . . to
arbitrate," and whether there is a "sufficient number
of knowledgeable arbitrators available . . . ." Section
42 then provides in relevant part that, following consid-
eration of these eleven factors, "[i]f . . . a majority of
the [g]rievance [c]ommittee conclude[s] that the matter
is properly arbitrable . . . the [g]rievance [c]ommittee
shall send the request for arbitration to the [c]hairper-
son of the [p]rofessional [s]tandards [c]ommittee for
arbitration by an arbitration [h]earing [p]anel. . . ."
Section 42 finally provides that, "[i]f the [g]rievance
[c]ommittee determines that a matter should not be
arbitrated . . . because of the amount involved or the
legal complexity, or for any other valid reason specified
in the [g]rievance [c]ommittee decision and written
report, either of the parties may appeal the decision to
the [b]oard of [d]irectors within twenty . . . days of
the date of notice of the committee decision . . . . The
[h]earing [p]anel can also dismiss the arbitration

request if the [h]earing [p]anel concludes the matter is not arbitrable. . . .

"In the event a request for arbitration is dismissed, any deposit submitted by the complainant shall be returned to the complainant."

We begin our analysis by noting that, "[e]arly in our judicial history we expressed the view that, since arbitration is designed to prevent litigation, it commands much favor from the law. . . . Especially is it to be encouraged as a means of promoting tranquility and the prompt and equitable settlement of disputes in the field of labor relations. . . . It is true, however, that the submission should set forth the questions to be resolved in such a manner as to show clearly what disputes are to be arbitrated." (Citations omitted.) *Local 63, Textile Workers Union of America, C.I.O.* v. *Cheney Bros.*, supra, 141 Conn. 612–13. "It necessarily follows that an award must conform to the submission." Id., 613.

In the present case, we conclude that the grievance committee's dismissal of the request for arbitration was a discretionary decision made on the basis of one of the eleven considerations set forth in the association's arbitration manual, in particular, the consideration of timeliness.[23] The dismissal thus did not constitute an

---

[23] We disagree with Justice Katz' conclusion that certain factors that the grievance committee must consider, including the 180 day filing limitation, are not discretionary in nature. The association's arbitration manual makes no distinction among the different factors. If, as Justice Katz suggests, the manual had intended certain factors to be considered mandatory and others to be discretionary, it would have included a provision to that effect.

Furthermore, there is no support for the view that the arbitration manual may be construed to mean that the grievance committee must dismiss a request for arbitration if affirmative findings are made with respect to factors other than the amount in dispute and the complexity of the legal issue raised. Although Justice Katz relies on *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 728 A.2d 1063 (1999), to make this point, the question of arbitrability in *Stratford*, in contrast to the question in present case, was submitted directly to the arbitrator, who rendered a decision and award resolving the issue on its merits. Moreover, the language used in the arbitration manual does not suggest that the griev-

arbitration award because the issue of timeliness was

ance committee must dismiss a request for arbitration if affirmative findings are made with respect to any of the eleven factors. Although the "note" that follows the fifth factor, i.e., whether pending litigation exists, provides that the grievance committee will not accept a matter for arbitration that is subject to pending litigation, the note also provides that this defect may be overcome if "the litigation is withdrawn with notice to the [b]oard and request for arbitration, or [if] the court refers the matter to the [b]oard for arbitration." Similarly, the note that follows the first factor, i.e., whether the request for arbitration is "acceptable in the form as received by the committee," provides that, if the arbitration request is not submitted in proper form "a member of the [g]rievance [c]ommittee may be assigned to contact the complainant and to provide procedural assistance to amend the request or [to] resubmit a new request in proper form and with proper content. The [g]rievance [c]ommittee member providing such assistance shall ensure that only procedural assistance is provided to the complainant, and that the complainant understands that the member is not representing the complainant." Thus, Justice Katz cites no reasonable basis in the case law or in the arbitration manual itself for her conclusion that the failure of an arbitration request to comply with any of the eleven factors requires a mandatory dismissal by the grievance committee and that such dismissal constitutes an arbitration award.

Justice Katz also creates an artificial distinction between the factors when she asserts that the 180 day time limitation is mandatory because it is "qualitatively different" from other, concededly discretionary factors that the grievance committee considers, such as the amount in dispute. Findings as to the amount in dispute and the timeliness of an arbitration request are not discretionary in and of themselves but, rather, require the exercise of discretion when the grievance committee decides whether to forward the arbitration request to the hearing panel.

The contention that the arbitration request requires the applicant to declare under penalty of perjury that it is filed within 180 days also has no bearing on whether the filing time is mandatory. As we subsequently note in this opinion, the applicant must agree when filing the arbitration request to abide by any potential arbitration award and to comply with it promptly, whereas the arbitration manual provides for an appeal from the grievance committee's dismissal of an arbitration request, thus strongly suggesting that a dismissal on the ground of an untimely filing is not an award.

Lastly, merely because the obligation to file an arbitration request within 180 days is not binding does not thereby allow the parties to pursue their claims in another forum or to undermine arbitration as a means of settling disputes because the committee only is required to "consider" the eleven factors and, therefore, a late filing does not necessarily preclude arbitration.

We also note that Justice Katz' assertion that the 180 day filing period may be mandatory has significant constitutional implications. She correctly notes that 180 days is an exceptionally short period of time in which to

not one of the issues raised by the parties for arbitration, and the discretionary language preceding the provision suggests that it was not intended to operate as a statute of limitations. Accordingly, the dismissal did not conform to the submission, did not satisfy the requirement of finality "as to the matters submitted so that the rights and obligations of the parties [were] definitely fixed"; id., 617; and, therefore, was not a decision on the merits. The association merely informed Coldwell Banker that the grievance committee had reviewed its submission and had dismissed it as untimely. Neither the letter informing Coldwell Banker of the dismissal nor the grievance committee report that accompanied the letter made any reference to Coldwell Banker's substantive claims or indicated that the claims had been considered on their merits.[24] The grievance committee simply con-

bring an arbitration request when compared to the applicable statutes of limitations in most court actions. See, e.g., General Statutes § 52-577 (tort claim shall be brought within three years from "date of the act or omission complained of"); General Statutes § 52-577a (a) (product liability claim shall be brought within three years from date "injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered"). In addition, treating the dismissal of an untimely arbitration request as an award when the issue of timeliness has not been submitted to the arbitrator deprives the party filing the request of the right to a fair trial because an award under the terms of the parties' agreement is final, subject only to confirmation or vacating by the trial court. Accordingly, the party filing the request would have no opportunity to receive a hearing on the issues submitted for arbitration by either the arbitrator or the court. We therefore reject the reasoning of Justice Katz' concurring and dissenting opinion.

[24] Significantly, *none* of the cases that Justice Katz cites in her concurring and dissenting opinion for the proposition that "[a] decision that a matter is not arbitrable can be an award" and that "a dismissal of a request to arbitrate for failure to file the request within mandatory time limits is an award" is applicable in the present context because the questions of arbitrability and mandatory time limits in each of the cited cases, unlike in the present case, were specifically raised by the parties and *submitted to an arbitrator or arbitration panel* for resolution pursuant to the language contained in the parties' arbitration agreement. Likewise, to the extent that Justice Katz refers to commentary providing that, "[s]hould the arbitrator declare [that] the dispute [is] not arbitrable, such a declaration would constitute an 'award' determinative of the rights of the parties and thus a final

cluded that the matter was not subject to arbitration.[25] See *Metro Properties, Inc.* v. *Yatsko*, 763 A.2d 617, 622 (R.I. 2000) (grievance committee's finding of nonarbitrability did not constitute award).[26] Indeed, the grievance committee would not have refunded the $500 arbitration fee, as it did in the present case, if the matter had been arbitrated.[27] See id. (refund of arbitration fee after grievance was deemed nonarbitrable).

judgment . . . subject to immediate appeal by a motion to vacate"; (internal quotation marks omitted) B. Sacks, Comment, "Arbitration in Connecticut: Issues in Judicial Intervention Under the Connecticut Arbitration Statutes," 17 Conn. L. Rev. 387, 395 (1985); that commentary also is inapposite. From the language that directly precedes this passage, it is clear that what the author meant was that, when the question of whether a matter falls within the scope of the arbitration provision is presented directly to the arbitrator, the arbitrator's decision that the dispute is not arbitrable constitutes an award. See id., 394–95. The parties in the present case, however, did not submit the question of timeliness to the arbitrator. Consequently, the grievance committee's discretionary dismissal cannot be considered an award, and there is no need to remand the case to the grievance committee for clarification.

[25] The grievance committee's determination that Coldwell Banker's submission was not subject to arbitration is not the same as a determination that a matter is nonarbitrable for substantive reasons. As the grievance committee's report suggests, a matter may be considered arbitrable from a substantive standpoint, as in the present case, but may not be subject to arbitration because the arbitrator declines to arbitrate in the exercise of discretion. We conclude, however, that the effect of a dismissal on these grounds is the same as the effect of a dismissal on the ground of nonarbitrability, and thus rely on cases in which findings of nonarbitrability were not deemed to constitute arbitration awards.

[26] We disagree with Cushman's contention that *Metro Properties, Inc.*, is inapplicable. Although the basis for the grievance committee's determination of nonarbitrability in *Metro Properties, Inc.*, was not untimeliness but, rather, a lack of evidence demonstrating a contractual relationship between the parties that would have given rise to a duty to arbitrate; see *Metro Properties, Inc.* v. *Yatsko*, supra, 763 A.2d 622; there was no arbitration following the determination of nonarbitrability in that case, and, therefore, no decision was rendered on the merits that could be considered an award.

[27] In *Daley* v. *Hartford*, 215 Conn. 14, 19, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990), this court referred to the fact that the state board of mediation and arbitration had issued an "award" that the grievance was nonarbitrable. The statement was nothing more than dictum, however, as the issue in that case did not require a determination as to whether a finding of arbitrability constituted an award.

Furthermore, in its letter advising Coldwell Banker that it had dismissed the arbitration request, the grievance committee noted that Coldwell Banker could appeal within twenty days to the board of directors and request that the original complaint be forwarded to a hearing panel pursuant to § 42 of the arbitration manual. Such an appeal would not have been allowed if the dismissal had constituted an arbitration award because paragraph five of the arbitration request provides that the party seeking arbitration consents "to abide by the arbitration award and to comply with it promptly." In fact, paragraph five of the arbitration request provides that, if the party does not comply with an award against it and one of the other parties to the arbitration must obtain judicial confirmation and enforcement of the award, the noncomplying party must agree to pay the costs and reasonable attorney's fees necessary to obtain compliance. Consequently, it is clear from the grievance committee's letter informing Coldwell Banker that it could appeal from the dismissal of its request that the dismissal did not constitute an award.

Our conclusion that the dismissal did not constitute an arbitration award also is supported by our decision in *Naugatuck* v. *AFSCME, Council #4, Local 1303*, 190 Conn. 323, 460 A.2d 1285 (1983). In that case, we upheld the trial court's determination that a finding on the issue of arbitrability did not constitute an award because it did not represent a final resolution of the underlying claim. See id., 325–27. The submission in *Naugatuck* had been divided into two questions: whether the grievance was arbitrable, and, if so, what disposition should follow. Id., 324. After the state board of labor and arbitration determined that the grievance was arbitrable, the plaintiff filed an application to vacate the decision of arbitrability before the board could address the merits; id.; but the trial court concluded that the application was premature because no award had been rendered.

Id., 325. On appeal to this court, we agreed, explaining that, "[u]nless an arbitration decision is an award . . . there is no right of appeal. This court has held that a finding [of] arbitrability is not an award until it becomes part of an award on the merits. *Conte* v. *Norwalk*, [173 Conn. 77, 79–80, 376 A.2d 412 (1977)]. Therefore, a party must demonstrate that an award on the merits has been rendered before any right to appeal attaches. *State* v. *Connecticut Employees Union Independent*, 184 Conn. 578, 580, 440 A.2d 229 (1981)." (Internal quotation marks omitted.) *Naugatuck* v. *AFSCME, Council #4, Local 1303*, supra, 326. This conclusion is consistent with the governing law on arbitration, which provides that an arbitration award settles the rights and obligations of the parties. See, e.g., *Local 63, Textile Workers Union of America, C.I.O.* v. *Cheney Bros.*, supra, 141 Conn. 617.

In the present case, as in *Naugatuck*, there was no award because the grievance committee did not address and resolve the issues raised in the request for arbitration, and the question of timeliness was not submitted to and determined by the arbitration panel. Consequently, as we previously noted, the dismissal did not conform to the submission. Moreover, the arbitration manual's description of the grievance committee's function makes clear that the grievance committee has no authority to make an arbitration award. In distinguishing the roles of the grievance committee and the professional standards committee, § 41 of the arbitration manual states that the latter functions as a court to adjudicate and make decisions on matters involving ethics or arbitration, whereas the grievance committee functions as a gatekeeper to determine whether a matter submitted for arbitration should in fact be arbitrated. Section 42 of the arbitration manual specifies that, after the grievance committee has considered the eleven enumerated factors, it shall determine whether "the matter is properly arbitrable," and, if so, shall forward the

request for arbitration to the professional standards committee *"for arbitration* by an arbitration [h]earing [p]anel." (Emphasis added.) Section 41 of the arbitration manual specifically provides that the grievance committee "does not hold hearings" and "does not mediate or arbitrate . . . disputes." Finally, § 42 provides that, "if the [g]rievance [c]ommittee determines that a matter should not be arbitrated," that determination may be appealed.

The foregoing provisions establish, without question, that the grievance committee has no function beyond that of determining whether a matter *should be* arbitrated. Under the applicable rules and procedures, the grievance committee thus has no authority to arbitrate the matter itself. Accordingly, we conclude that the grievance committee's dismissal of Coldwell Banker's request for arbitration did not constitute an award under the arbitration manual's provisions and that the trial court improperly granted Coldwell Banker's application to confirm the award because there was no award to confirm.

Cushman concedes that the grievance committee dismissed the arbitration request for untimeliness without reaching the merits but contends that enforcing the limitations regarding timeliness contained in the arbitration agreement, thereby precluding litigation of substantively arbitrable yet untimely commenced claims, promotes the finality of arbitrable disputes in the same manner as a statute of limitations. Cushman also argues that, unless such limitations are enforced, parties will be able to avoid their contractual obligations, safe in the knowledge that Connecticut courts nonetheless will be open to litigate their claims. We disagree.

As we previously discussed, the association's arbitration manual does not establish strict time limitations for the submission of arbitrable claims that have the

same preclusive effect as a statute of limitations. The manual simply provides that whether the submission has been filed within 180 days of the closing of the transaction, or no more than 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, is one of eleven factors that the grievance committee "shall consider" in reviewing a request for arbitration and in deciding whether the matter is "properly arbitrable . . . ." The eleven factors serve as guideposts, not absolute requirements, to assist the grievance committee in making its decision. Consequently, there are no rules in the code of ethics or the arbitration manual that prohibit the grievance committee from forwarding the arbitration request to the professional standards committee for arbitration on the merits, even if the request is untimely. Correspondingly, there are no rules that prohibit the judicial resolution of claims dismissed for *any* of the eleven discretionary reasons enumerated in the arbitration manual, such as the complexity of the arbitrable issue, the amount in dispute or an untimely filing, even though arbitration is the favored method of settling disputes. Although Cushman acknowledges that the dismissal of a matter on the basis of its legal complexity or the amount in dispute does not preclude subsequent litigation, it offers no valid reason why a dismissal for untimeliness should be treated differently from a dismissal on any other ground described in the arbitration manual. Accordingly, Cushman's argument is not persuasive, and we conclude that the grievance committee's dismissal of Coldwell Banker's arbitration request did not constitute an arbitration award because a failure to comply with the 180 day filing period does not have the same effect as a failure to comply with a statute of limitations.

Cushman cites *Cole* v. *Clifford*, Docket No. DV-00-234, 2000 Mont. Dist. LEXIS 2090, *23 (December 12,

2000), for the proposition that a party that has agreed to mandatory arbitration may not be permitted to thwart the purpose of our arbitration statutes by "wait[ing] out" the limitations period prescribed by the arbitration clause in its contract and then bring litigation in court. This argument has at least two flaws. First, as we observed in the preceding discussion, the grievance committee's mandate to "consider" timeliness as one of eleven factors in deciding whether a matter is "properly arbitrable" suggests that the 180 day filing period never was intended to function as a statute of limitations that would preclude arbitration *or* subsequent litigation in the event of an untimely filing. Second, although the court in *Cole* concluded that a broker's failure to arbitrate his claim within 180 days was a bar to subsequent litigation pursuant to an arbitration agreement that was contained in the code of ethics and arbitration manual of the National Association of Realtors; see *Cole* v. *Clifford*, supra, *17–*20, *23; on which the association's code of ethics and arbitration manual are based, the language of the agreement in that case differed from the language of the agreement in this case because it provided that "requests for arbitration *must be filed* within 180 days after the closing of the transaction . . . ." (Emphasis added; internal quotation marks omitted.) Id., *17. Furthermore, there was no discussion in *Cole* of the function of the grievance committee and the procedures that it was required to follow, which we find dispositive in the present case. Accordingly, the court's conclusions in *Cole* that arbitration was the exclusive method for resolving the controversy and that the 180 day time limitation for the filing of an arbitration request served, in effect, as a statute of limitations are inapposite.

## II

Coldwell Banker next contends that the trial court improperly granted the defendants' motion to dismiss

the noncontract claims against Cushman and all of the claims against Grieco and Kelly because the court did not mandate arbitration of those claims and Coldwell Banker's submission was restricted to the contract claims involving Cushman. Cushman responds that the trial court correctly found that the claims were barred by the grievance committee's decision because the submission was unrestricted and applied to all of Coldwell Banker's claims and to all of the defendants.[28] Our determination that the grievance committee's dismissal of Coldwell Banker's arbitration request did not constitute an arbitration award that resolved the claims submitted for arbitration removes the basis for and invalidates both the trial court's decision to confirm the award *and* its derivative decision to dismiss Coldwell Banker's remaining claims against the defendants. Thus, we need not reach the issue of whether the grievance committee's dismissal of the arbitration request applied to the noncontract claims and to the claims against Grieco and Kelly because, even if it did, it did not constitute an award that precluded subsequent litigation of those claims. Accordingly, the trial court has subject matter jurisdiction to consider all of Coldwell Banker's claims against all of the defendants in the present action.

### III

Cushman argues as an alternate ground for affirmance of the trial court's dismissal of the noncontract claims against Cushman and all of the claims against Grieco and Kelly that, even if this court determines that the alleged arbitration award applies only to the breach of contract and fraud claims against Cushman and that the remaining claims were not submitted

---

[28] As we noted previously, the trial court concluded that when Coldwell Banker signed the form provided by the association as part of its submission of the dispute for arbitration, it thereby authorized the association to issue a binding determination on any contract or specific noncontract claims arising out of the disputed transaction.

to the grievance committee for arbitration, the trial court has no jurisdiction to consider them because they are exclusively arbitrable and Coldwell Banker has failed to exhaust the exclusive remedy of arbitration.[29] Coldwell Banker responds that Cushman's alternate ground for affirmance is nothing more than an appeal from the trial court's denial of the defendants' first motion to dismiss in 2002, that the proper procedure was for Cushman to file a cross appeal under Practice Book § 61-8 and, therefore, that Cushman cannot belatedly raise the issue of exclusive arbitrability at this time as an alternate ground for affirming the trial court's decision to grant the motion to dismiss. We reject Cushman's alternate ground for affirmance.

The following additional facts are relevant to our resolution of this claim. In the motion to dismiss the noncontract claims and the claims against Grieco and Kelly, which was filed in conjunction with Cushman's application to confirm the arbitration award, the defendants argued that the trial court lacked jurisdiction to consider those claims because the parties were bound, by virtue of their membership in the association, to submit the claims to arbitration. The defendants further argued that, because the association's standards of

[29] Cushman appears to assert, in its brief to this court, two theories in support of this claim. On the one hand, Cushman contends that Coldwell Banker's claims are exclusively arbitrable because the agreement provides that they are subject to arbitration alone and *never* may be considered by the trial court, a position Cushman also took in arguing in support of the motion to dismiss before the trial court following the grievance committee's decision. In other words, "[l]itigation in the courts [simply] is not an option." On the other hand, Cushman also contends that the remaining claims must be submitted to the grievance committee "for a threshold determination of arbitrability," and that, "[u]ntil Coldwell [Banker] pursues arbitration of its claims . . . the trial court lacks subject matter jurisdiction over [the] complaint." This argument clearly anticipates that the court may have subject matter jurisdiction at some point in time following an initial determination of arbitrability by the grievance committee. Cushman, however, did not make this argument before the trial court.

practice provide that arbitration is the exclusive dispute resolution procedure for resolving arbitrable claims, the court was deprived of subject matter jurisdiction "to *ever* decide the merits of [such] claims . . . ."[30] (Emphasis added.) To clarify this point, the defendants distinguished the effect of the parties' agreement from "the more general rule that the court lacks subject matter jurisdiction over any dispute governed by an arbitration provision expressly requiring arbitration as a *condition precedent* to litigation." (Emphasis added.) The defendants specifically argued that (1) Judge Sheldon's prior decision limiting the arbitration to the breach of contract and fraud claims against Cushman was void because the parties' arbitration submission expressly delegated to the grievance committee the authority to make a determination of arbitrability, (2) even if the court had authority to determine arbitrability, all of the claims nevertheless were arbitrable, and (3) Coldwell Banker had waived its right to contest arbitrability by voluntarily submitting its complaint for arbitration. With respect to the claims against Grieco and Kelly, they argued that they were obligated to participate in arbitration by virtue of their membership in the association and because they were acting as agents for Cushman in the real estate transaction.

Turning to the applicable legal principles, we observe that Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing

---

[30] The memorandum in support of the motion to dismiss indicated that the exclusive procedure for dispute resolution that deprived the court of subject matter jurisdiction "foreclos[ed] the possibility that the merits of arbitrable disputes between realtors of different firms [could] *ever* be litigated in the courts"; (emphasis in original); and, accordingly, "the court *permanently* lack[ed] subject matter jurisdiction over the merits of these claims." (Emphasis added.)

of the appellant's preliminary statement of the issues." Practice Book § 60-5 also provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ."

In the present case, Cushman properly filed a preliminary statement of issues that included the issue of exclusive arbitrability. This court, however, is not bound to consider Cushman's argument that the grievance committee must make a threshold determination of arbitrability prior to litigation because such a claim was not distinctly raised at trial. See footnote 29 of this opinion; see also, e.g., *Gallo* v. *Barile*, 284 Conn. 459, 478 n.15, 935 A.2d 103 (2007) (declining to consider alternate ground for affirmance because claim not raised at trial). We nevertheless consider the exclusivity claim in its entirety because it implicates the trial court's subject matter jurisdiction, and a claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings.[31] E.g., *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 390, 926 A.2d 1035 (2007) ("a claim that a court lacks subject matter jurisdiction to hear a case . . . may be raised at any time"); see also *Neiman* v. *Yale University*, 270 Conn. 244, 253, 851 A.2d 1165 (2004) (holding that trial court properly granted motion to dismiss for lack of subject matter jurisdiction because plaintiff had failed to exhaust remedies available through exclusive grievance procedure).[32]

---

[31] For the same reason, we reject Coldwell Banker's contention that we should not consider this alternate ground because it merely is a belated and improper appeal from the trial court's partial denial of the first motion to dismiss and that the claim should have been raised in a cross appeal.

[32] In the present case, the defendants originally filed a motion to dismiss, or, in the alternative, to stay the proceedings pending arbitration under § 52-409. Judge Sheldon thus did not dismiss the contract claims against the defendants but granted the motion to stay pending arbitration of the contract claims against Cushman and denied the motion to dismiss the remaining claims against Grieco and Kelly after determining that they were not subject to the arbitration agreement.

With respect to the noncontract claims, the evidence in the record fails to establish that they fall within the scope of article 17 of the code of ethics. Coldwell Banker and Cushman both rely on standard of practice 17-4 (4) of the association's code of ethics to support their divergent views. Standard of practice 17-4 (4) provides for the arbitration of noncontractual disputes "[w]here two or more listing brokers claim entitlement to compensation pursuant to open listings with a seller or landlord who agrees to participate in arbitration (or who requests arbitration) and who agrees to be bound by the decision." Cushman and Coldwell Banker, however, were not "listing brokers," as that term has been defined in our case law,[33] because they represented the interests of CSC, the potential tenant of the property, and not the interests of the property owner, during the lease negotiations.

With respect to the contract claims against the individual defendants, Judge Sheldon found that Grieco and Kelly were not signatories to the contract and, therefore, that the contract claims against them could not be arbitrated. Neither party disputes this finding. Accordingly, the noncontract claims against the defendants and the contract claims against Grieco and Kelly would not have satisfied the requirements for arbitra-

---

[33] In *Real Estate Listing Service, Inc.* v. *Connecticut Real Estate Commission*, 179 Conn. 128, 425 A.2d 581 (1979), we explained that a listing agreement is an agreement between the property owner and the broker, and described the three basic types of listing agreements traditionally used in this state: "[T]he open listing, under which the property owner agrees to pay to the listing broker a commission if that broker effects the sale of the property but retains the right to sell the property himself as well as the right to procure the services of any other broker in the sale of the property; the exclusive agency listing, which is for a time certain and authorizes only one broker to sell the property but permits the property owner to sell the property himself without incurring a commission . . . and the exclusive right to sell listing, under which the sale of the property during the contract period, no matter by whom negotiated, obligates the property owner to pay a commission to the listing broker." (Citations omitted.) Id., 132.

tion in the first instance, even if they had been submitted to the association as individual claims. Accordingly, we reject Cushman's contention that the trial court's judgment should be affirmed on the alternate ground that each of Coldwell Banker's remaining claims is exclusively arbitrable.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

KATZ, J., concurring in part and dissenting in part. The crux of the dispute in the present case is whether the dismissal by the grievance committee (grievance committee) of the Greater Hartford Association of Realtors, Inc., of the request for arbitration filed by the plaintiff, Coldwell Banker Manning Realty, Inc., on the ground that the request had not been filed within a specific 180 day time period constituted an award that, in the absence of a motion to vacate, conclusively disposed of the controversy between the parties. The majority concludes that: the 180 day period is a discretionary time limit after which time the grievance committee simply declined to exercise jurisdiction; such a discretionary decision is not an award; and, accordingly, the grievance committee's decision does not require dismissal of the plaintiff's action in the trial court. The majority's principal reason for reaching its threshold conclusion is that, because the arbitration agreement (agreement) between the parties in the present case instructs the grievance committee to "consider" certain factors before it decides whether to refer the matter to an arbitration panel for a full evidentiary hearing and some of those factors undoubtedly involve the exercise of discretion, the 180 day period for filing requests for arbitration similarly must be a matter of

discretion. The majority therefore has concluded that the trial court's judgment should be reversed and the case should be remanded to that court for further proceedings on the plaintiff's complaint. I respectfully disagree with the remand portion of the decision as it applies to the claims against the named defendant, Cushman and Wakefield of Connecticut, Inc. (defendant).[1]

My principal disagreement with the majority's analysis is that it has reached its conclusion on the basis of an unfounded determination—namely, that, as a matter of law, the agreement clearly and unambiguously indicates the intended effect of the time limit. In my view, this approach is improper because, as I explain in this opinion, the agreement is ambiguous as to this issue. See *State* v. *Philip Morris, Inc.*, 289 Conn. 633, 643, 959 A.2d 997 (2008) (noting that arbitration agreement is subject to principle of contract construction that, "[a]lthough the intention of the parties typically is a question of fact, if their intention is set forth clearly and unambiguously, it is a question of law" [internal quotation marks omitted]). Indeed, the majority's opinion overlooks the tension between two policy considerations created by the ambiguity in the agreement: (1) the plaintiff's construction that the majority adopts renders the mandatory arbitration provision in the agreement largely illusory, contrary to the preference for enforce-

---

[1] I agree with the plaintiff that the trial court's ruling expressly held that the claims against the individual defendants, Joel M. Grieco and Robert E. Kelly, were not subject to arbitration and that the plaintiff did not expand the scope of arbitration in its submission to include those defendants. The plaintiff listed only the named defendant as a respondent in the request for arbitration and expressly stated in its accompanying letter that the request "is limited [to] matters as set forth in the court's [attached] ruling." Therefore, I would conclude that the grievance committee's dismissal of the request for arbitration had no effect on the claims against Grieco and Kelly that remained pending before the trial court subject to the conclusion of the arbitration proceedings.

ment of such agreements; and (2) the defendant's construction raises questions of fair notice to parties that they would have a considerably shorter period in which to bring an arbitration action than they otherwise would have under the applicable statutes of limitations in a court action. Because I would conclude that the agreement is ambiguous and that the decision issued pursuant to that agreement does not make clear whether the grievance committee declined to exercise jurisdiction or lacked jurisdiction after the 180 day period expired, I am unable to determine whether this is an award that conclusively determines the parties' rights as to the claims at issue. I, therefore, would remand this matter to the trial court with direction to remand the case to the grievance committee to clarify its decision.

I begin with certain relevant principles of arbitration jurisprudence. Our court has not defined what constitutes an award. The few courts that have defined the term have done so in broad terms that provide little guidance in the present matter.[2] Although the majority assumes that only decisions on the merits of the claims submitted to arbitration constitute awards, it implicitly

---

[2] See, e.g., *Chillum-Adelphi Volunteer Fire Dept., Inc.* v. *Button & Goode, Inc.*, 242 Md. 509, 516, 219 A.2d 801 (1966) (defining "arbitration award" as "decision of an extra-judicial tribunal which the parties themselves have created, and by whose judgment they have mutually agreed to abide" [internal quotation marks omitted]); *Chiesa* v. *Fetchko*, 318 Pa. Super. 188, 194, 464 A.2d 1293 (1983) ("An award has been defined as the decision or determination rendered by arbitrators or commissioners upon a controversy submitted to them. Black's Law Dictionary [5th Ed. 1979]. See also 3 P.L.E. Arbitration § 12 [an award is the final judgment or decision pronounced by the arbitrators in settlement of the controversy submitted to them]. Also, it has been held that an award is a judgment of a tribunal selected by the parties to determine matters actually in variance between them. *Keiser* v. *Berks County*, 253 Pa. 167, 97 A. 1067 [1916]."), aff'd, 504 Pa. 503, 475 A.2d 740 (1984); *Beroth* v. *Apollo College, Inc.*, 135 Wash. App. 551, 558 n.3, 145 P.3d 386 (2006) ("[a]n arbitrator's award is a 'statement of the outcome, much as a judgment states the outcome' ").

acknowledges that, if the operative time period in the present case was tantamount to a jurisdictional statute of limitations, the dismissal would constitute an award. I disagree with the majority's first point, but agree with the second.

A decision that a matter is not arbitrable can be an award; see *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 110–25, 728 A.2d 1063 (1999) (addressing whether doctrine of res judicata barred parties from relitigating question of whether matter was arbitrable under contract when prior "award" had been issued deciding that matter was not arbitrable); that properly may be the subject of a motion to vacate or to confirm.[3] See, e.g., *Local 369, Utility Workers Union of America, AFL-CIO* v. *Boston Edison Co.*, 752 F.2d 1, 2 (1st Cir. 1984); *Metal Products Workers Union, Local 1645, UAW-AFL-CIO* v. *Torrington Co.*, 358 F.2d 103, 106 (2d Cir. 1966); *Hotel Employees & Restaurant Employees Union Local No. 17* v. *Criterion Restaurant, Inc.*, 352 N.W.2d 835, 837 (Minn. App. 1984); *Case* v. *Monroe Community College*, 89 N.Y.2d 438, 441, 677 N.E.2d 279, 654 N.Y.S.2d 708 (1997); *Council 13, American Federation of State, County & Municipal Employees, AFL-CIO* v. *Commonwealth*, 76 Pa. Commw. 569, 571, 464 A.2d 663 (1983); *Arbitration,*

---

[3] The majority relies on *Metro Properties, Inc.* v. *Yatsko*, 763 A.2d 617, 622 (R.I. 2000), for a contrary conclusion. In that case, the Rhode Island Supreme Court concluded that a party was not entitled to attorney's fees that were to be awarded to a prevailing party if that party needed to obtain judicial enforcement of an award. The court concluded, inter alia, that the arbitration panel's decision that the matter was not arbitrable because a *condition precedent* to arbitration had not been met, namely, that there was a contractual relationship between the parties, was not an award. Id. I would simply point out that the basis for the underlying arbitration decision in that case is distinguishable from a decision that the matter submitted is not arbitrable. To the extent the Rhode Island court intended to state a broad principle applicable to the latter, the court cited no authority for such a proposition and, indeed, the authority I have uncovered, which is noted in the text above, is all to the contrary.

*Madison Teachers, Inc.* v. *Madison Metropolitan School District*, 271 Wis. 2d 697, 707, 678 N.W.2d 311 (2004); see also B. Sacks, Comment, "Arbitration in Connecticut: Issues in Judicial Intervention Under the Connecticut Arbitration Statutes," 17 Conn. L. Rev. 387, 395 (1985) ("Should the arbitrator declare the dispute not arbitrable, such a declaration would constitute an 'award' determinative of the rights of the parties and thus a final judgment. This decision is subject to immediate appeal by a motion to vacate under the provisions of [General Statutes §] 52-418.").

More significantly for our purposes, a dismissal of a request to arbitrate for failure to file the request within *mandatory* time limits is an award that may be challenged by way of a motion to vacate or that may be confirmed. See, e.g., *Patten* v. *Signator Ins. Agency, Inc.*, 441 F.3d 230, 231 (4th Cir.), cert. denied, 549 U.S. 975, 127 S. Ct. 434, 166 L. Ed. 2d 308 (2006); *Phillips* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Docket No. 3:05cv1959, 2006 U.S. Dist. LEXIS 50952, *8–10 (D. Conn. July 26, 2006); *Young* v. *Ross-Loos Medical Group, Inc.*, 135 Cal. App. 3d 669, 671–72, 673–74, 185 Cal. Rptr. 536 (1982); *Beroth* v. *Apollo College, Inc.*, 135 Wash. App. 551, 556–59, 145 P.3d 386 (2006); see also *Tucker* v. *Fireman's Fund Agribusiness, Inc.*, 365 F. Sup. 2d 821, 823–24 (S.D. Tex. 2005) (analyzing motion to compel arbitration as motion to vacate award when petitioner claimed that, "because the arbitrator dismissed the claim based on a time limits defense, arbitration never actually occurred," given that petitioner's arguments "appear to concern the validity of the award rather than the existence of arbitration").

A related principle that is of paramount significance in the present case is that, when arbitration is mandated as the exclusive method of dispute resolution, a dismissal of a request to arbitrate for failure to file the request within mandatory time limits conclusively

determines the controversy.[4] See *Cole* v. *Clifford*, District Court, Docket No. DV-00-234, 2000 Mont. Dist. LEXIS 2090, *23 (December 12, 2000) (concluding that failure to file timely request for mandatory arbitration procedure within mandated time period barred institution of court action to address otherwise arbitrable claims); *Ercoli* v. *Empire Professional Soccer, LLC*, 39 App. Div. 3d 1148, 1148–49, 833 N.Y.S.2d 818 (2007) (concluding that trial court properly granted motion to dismiss complaint on ground that plaintiff's sole available remedy was arbitration because he was subject to binding arbitration provision and arbitrator had dismissed demand for arbitration as untimely); *Rhodes* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 App. Div. 2d 767, 768, 427 N.Y.S.2d 826 (1980) ("it is true that when arbitration is the exclusive remedy, and the arbitration agreement contains a provision limiting the time when the arbitration can be commenced, a party who permits that time to elapse without commencing an arbitration proceeding cannot avoid that limitation by bringing an action at law"); 1 L. Edmonson, Domke on Commercial Arbitration (3d Ed. 2007) § 19:1, p. 19-4 ("it appears to be a settled practice of courts that when the time expires for initiating arbitration, the party loses all remedies and cannot institute a court action later, since otherwise the result would be a return to the situation obtaining when agreements to arbitrate were revocable at the will of a party thereto" [internal quotation marks omitted]).

Therefore, I agree with the majority that the dispositive issue in this case is whether the dismissal was a

---

[4] The majority concludes that this principle is inapplicable because, as I have noted in footnote 6 of this concurring and dissenting opinion, arbitration is not mandated under the operative agreement in the present case *if* both parties agree and properly notify the arbitration authority that they do not wish to arbitrate the matter. Contrary to the majority's view, it appears to me that this principle is fully applicable when the parties have not met the prerequisites to avoid their obligation to arbitrate.

mandatory, jurisdictional requirement, and thus was an award, or whether the dismissal was a mere matter of discretion, and thus was not an award.[5] See *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 422–23 (9th Cir. 1984) (concluding that arbitral decision rendered pursuant to arbitration rule providing that " 'at any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to the remedies provided by law' " constituted award, not dismissal). Because the grievance committee's decision in the present case does not indicate this fact expressly, I turn to the relevant provisions in the agreement pursuant to which the grievance committee's decision was rendered. The agreement in this case is the code of ethics and standards of practice of the National Association of Realtors (code of ethics), which was adopted by the Greater Hartford Association of Realtors, Inc. (association), pursuant to its bylaws, as well as the association's own code of ethics and arbitration manual (arbitration manual). Under the code of ethics, articles 1 through 9 set forth "Duties to Clients

---

[5] I am not inclined to agree with the plaintiff that the fact that there was no evidentiary hearing and that the fee was refunded dictate a conclusion that the grievance committee's decision is not an award. The parties contractually agreed to accept the arbitration procedures, the plaintiff stipulated to the grievance committee the fact that the request for arbitration had been filed after the 180 day time period had passed; see footnote 12 of this concurring and dissenting opinion; and there is no claim that these procedures are unenforceable. See *HH East Parcel* v. *Handy & Harman*, 287 Conn. 189, 196, 947 A.2d 916 (2008) ("[A]rbitration is a creature of contract, whereby the parties themselves, by agreement, define the powers of the arbitrators. . . . [W]hen the parties have established the authority of the arbitrator, the extent of our judicial review of the award is delineated by the scope of the parties' agreement." [Internal quotation marks omitted.]); see also *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 39–40, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("[t]he parties bargained for arbitration to settle disputes and were free to set the procedural rules for arbitrators to follow if they chose"). If the grievance committee had concluded that the dispute was not arbitrable, I cannot see how its refund of the fee would render that decision, which otherwise would be treated as an award, not to be an award.

and Customers," articles 10 through 14 set forth "Duties to the Public," and articles 15 through 17 set forth "Duties to [Realtors]." Article 17 of the code of ethics, which is the only provision to address arbitration, provides in relevant part: "In the event of contractual disputes or specific non-contractual disputes as defined in [s]tandard of [p]ractice 17-4 between [Realtors] (principals) [a]ssociated with different firms, arising out of their relationship as [Realtors], the [Realtors] shall submit the dispute to arbitration in accordance with the regulations of their [b]oard or [b]oards rather than litigate the matter."[6]

Part nine of the arbitration manual sets forth the authority, function and procedures of the grievance committee in arbitration proceedings. As the majority properly points out, this part of the arbitration manual clearly indicates that the grievance committee acts in a gatekeeping capacity, determining whether the request for arbitration should be referred to an arbitration panel for a full evidentiary hearing. Part nine, § 42 (B), of the arbitration manual provides in relevant part: "In reviewing a request for arbitration, the [g]rievance [c]ommittee shall consider the following [eleven questions] . . . ."[7] Question three of part nine, § 42 (B), of

---

[6] Article 17 of the code of ethics further provides that arbitration is not required if the parties notify the board in writing that they have chosen not to arbitrate the matter.

[7] Part nine, § 42, of of the arbitration manual provides: "In reviewing a request for arbitration, the [g]rievance [c]ommittee shall consider the following:

"(1) Is the request for arbitration acceptable in the form as received by the committee? If not in proper form, the [c]hairperson may request that the [e]lected [s]ecretary or the [e]xecutive [o]fficer contact the complainant to advise that the request must be submitted in proper form.

"NOTE: If deemed appropriate by the [c]hairperson, a member of the [g]rievance [c]ommittee may be assigned to contact the complainant and to provide procedural assistance to amend the request or resubmit a new request in proper form and with proper content. The [g]rievance [c]ommittee member providing such assistance shall ensure that only procedural assistance is provided to the complainant, and that the complainant understands that the member is not representing the complainant.

the arbitration manual is: "Was the request for arbitration filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later?"

The majority has set forth several reasons why it has concluded that the 180 day time period is discretionary, which I need not repeat. I would agree with the majority

"(2) Are all necessary parties named in the request for arbitration? The duty to arbitrate is an obligation of [Realtor] principals. [Realtor] principals include sole proprietors, partners in a partnership, officers or majority shareholders of a corporation, or office managers (including branch office managers) acting on behalf of principals of a real estate firm. . . .

"(3) Was the request for arbitration filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later? . . .

"(4) Are the parties members in good standing or otherwise entitled to invoke arbitration through the [b]oard's facilities? Were the parties members at the time the facts giving rise to the dispute occurred?

"(5) Is litigation pending in connection with the same transaction?

"NOTE: No arbitration shall be provided on a matter pending litigation unless the litigation is withdrawn with notice to the [b]oard and request for arbitration, or unless the court refers the matter to the [b]oard for arbitration.

"(6) Is there any reason to conclude that the [b]oard would be unable to provide an impartial [h]earing [p]anel?

"(7) If the facts alleged in the request for arbitration were taken as true on their face, is the matter at issue related to a real estate transaction and is it properly arbitrable, i.e., is there some basis on which an award could be based?

"(8) If an arbitrable issue exists, are the parties required to arbitrate or is their participation voluntary?

"(9) Is the amount in dispute too small or too large for the [b]oard to arbitrate?

"(10) Is the matter too legally complex, involving issues that the arbitrators may not be able to address in a knowledgeable way?

"(11) Is there a sufficient number of knowledgeable arbitrators available?

"If all of the relevant questions have been considered, and a majority of the [g]rievance [c]ommittee conclude that the matter is properly arbitrable by the [b]oard, the [g]rievance [c]ommittee shall send the request for arbitration to the [c]hairperson of the [p]rofessional [s]tandards [c]ommittee for arbitration by an arbitration [h]earing [p]anel."

that the fact that the grievance committee undoubtedly has discretion to dismiss a request for arbitration under some of the relevant considerations, such as when it deems the amount in dispute too large or too small or the matter too legally complex for the arbitrators,[8] could suggest that the 180 day period similarly is a matter of discretion.[9] I would add the following facts in support of the majority's construction. The 180 day time period is set forth only in the part of the arbitration manual, which sets forth the *grievance committee's* authority, function and procedures, and not in the code of ethics, which sets forth the obligations of association members, including such members' arbitration rights and duties. Moreover, the reference to the 180 day time period in the arbitration manual is not stated in terms

---

[8] Apparently, the arbitration panels are comprised of other realtors who are association members, not attorneys.

[9] I note, however, that, unlike the agreement in the present case, other realtor arbitration agreements expressly have acknowledged the arbitral authority's discretion to decline to exercise jurisdiction over an otherwise mandatory subject of arbitration, as well as the effect of such a decision. See, e.g., *Berke* v. *Tri Realtors*, 208 Cal. App. 3d 463, 468, 257 Cal. Rptr. 738 (1989) (Citing provisions of the arbitration manual providing that "every [a]ctive member binds himself [or herself] and agrees to submit to arbitration by the [b]oard's facilities all disputes with any other [a]ctive member, if either party to the dispute should so request and *if the [b]oard is willing to arbitrate the matter*" and further providing: "If either the [c]hairperson of the [p]rofessional [s]tandards [p]anel, in conjunction with the [s]ecretary, or the [a]rbitration [p]anel selected in the manner hereinafter provided determine that because of the magnitude of the amount involved or the legal complexity of the controversy the dispute should not be arbitrated, they shall so report to the [b]oard of [d]irectors and if the [b]oard of [d]irectors concurs, the arbitration shall terminate *and the parties shall be relieved of their obligation to arbitrate the controversy*. In this event, any deposit made by the parties shall be returned to the parties." [Emphasis altered.]); see also *Jorgensen Realty, Inc.* v. *Box*, 701 P.2d 1256, 1257 (Colo. App. 1985) (noting that arbitration manual gave Colorado Association of Realtors authority to determine whether it would accept dispute and reciting fact that chairman of professional standards committee of Colorado Association of Realtors had informed party requesting arbitration that grievance committee had not accepted dispute for arbitration and that "plaintiff was free to pursue other remedies").

that impose an affirmative obligation on the parties. Compare *Cole* v. *Clifford*, supra, 2000 Mont. Dist. LEXIS *17 (quoting code of ethics provision stating "requests for arbitration must be filed within 180 days after the closing of the transaction, if any, or within 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later" [internal quotation marks omitted]). Nor does the arbitration manual expressly set forth a consequence for failing to file within that period. Compare *Tupper* v. *Bally Total Fitness Holding Corp.*, 186 F. Sup. 2d 981, 988 (E.D. Wis. 2002) ("Parties agree to waive all statutes of limitations that would apply in a court of law or administrative proceeding, and to submit the [d]ispute no later than one year after the [d]ispute arises. Failure to submit a [d]ispute within these time limits is intended to, and shall to the furthest extent permitted by law, be a waiver and release with respect to the [d]ispute, and, in the absence of a timely submitted [d]ispute, an [a]rbitrator has no authority to resolve the [d]ispute or render an [a]ward." [Internal quotation marks omitted.]); *DeGroff* v. *Mascotech Forming Technologies-Fort Wayne, Inc.*, 179 F. Sup. 2d 896, 909 (N.D. Ind. 2001) ("[E]mployees must initiate arbitration within one year of the time the claim accrued or, in the case of a claimed statutory violation, the time limits imposed by the applicable statute of limitations, whichever is longer. The failure to initiate arbitration within this time limit will forever bar any claim involving that dispute." [Internal quotation marks omitted.]). Indeed, in light of the fact that a statute of limitations in the three to six year range otherwise likely would control in a judicial action; see General Statutes §§ 52-576, 52-577, 52-581; it seems counterintuitive that the agreement would not utilize mandatory language if that were the intended effect. Therefore, the majority's construction of the agreement and the decision as a matter

of the grievance committee declining to exercise jurisdiction is not unfounded.

I disagree, however, with the majority's implicit conclusion that this construction is the only reasonable one and therefore that the agreement is unambiguous. See *Levine* v. *Advest, Inc.*, 244 Conn. 732, 746, 714 A.2d 649 (1998) (contract is ambiguous if agreement on its face is reasonably susceptible of more than one interpretation); *Rund* v. *Melillo*, 63 Conn. App. 216, 220, 772 A.2d 774 (2001) ("[c]ontract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion" [internal quotation marks omitted]). Because the majority's construction hinges on the grievance committee's authority only to "consider" certain matters and the clearly discretionary nature of some of those matters, I first address those points before turning to other factors that would indicate that the agreement mandates the grievance committee to dismiss a matter filed after the 180 day period.

First, the grievance committee undoubtedly would be required to dismiss a request for arbitration if it were to answer some of the questions to be considered in the affirmative. For example, the grievance committee must consider whether the matter is arbitrable[10] and

---

[10] I am unclear how our case law concluding that a decision that a matter is arbitrable is not an award advances the majority's reasoning. In each of the cases in which this court concluded that such a decision was not an award, there was another matter pending before an arbitrator as to the *merits* of the dispute. Therefore, we have treated such decisions as not being an award solely because they are not final; in other words, they are interlocutory decisions. See *State* v. *Connecticut Employees Union Independent*, 184 Conn. 578, 579–80, 440 A.2d 229 (1981); *Conte* v. *Norwalk*, 173 Conn. 77, 80, 376 A.2d 412 (1977). In the present case, there is no interlocutory, nonfinal decision. I am similarly unclear as to the majority's reliance on case law addressing whether an award is outside the scope of the submission. In such a case, the arbitrator has exceeded his authority; *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005); whereas the majority's position in the present case, if I understand it correctly, is that the arbitral authority *had* authority to reach the merits but *declined* to exercise it beyond the 180 day period.

whether the parties are subject to arbitration because they either currently are in good standing with the association or were association members at the time the facts giving rise to the dispute occurred. If the grievance committee were to conclude that the matter is *not* arbitrable, a decision that, like the one in the present case, is made on the basis of the facts alleged in the request for arbitration, such a decision would constitute an award. See *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 248 Conn. 111–15. The grievance committee would have no continuing jurisdiction and no discretion to refer the matter for an evidentiary hearing.[11] Therefore, the mere fact that the 180 day time limit is listed as a matter that the grievance committee must consider does not render the meaning of this provision unambiguously a matter of discretion.

Second, the nature of the 180 day time limit is qualitatively different than the aforementioned clearly discretionary factors that the grievance committee considers. A request either is or is not, as a matter of fact, filed within the 180 day period. There is no discretion involved in making that determination. By contrast, whether "the amount in dispute [is] too small or too large for the [b]oard to arbitrate" or "the matter [is] too legally complex, involving issues that the arbitrators may not be able to address in a knowledgeable way" pursuant to part nine, § 42 (B) (9) and (10) of the arbitration manual are matters over which grievance committee members reasonably could disagree. Indeed, there is no qualitative language to guide the grievance committee in deciding under what circumstances an untimely filed claim could be referred to arbitration.

---

[11] As I previously have noted herein, a decision that a matter is not arbitrable is an award. Therefore, it cannot be said that the grievance committee's gatekeeping function deprives it of authority to render an award when the grievance committee is charged as part of the function to make that determination.

Looking to the arbitration request itself, that form requires the applicant to declare, "[*u*]*nder the penalties of perjury* . . . [that] this request for arbitration is filed within 180 days after the closing of the transaction, if any, or within 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later."[12] (Emphasis added.) The applicant is not required to attest to the other factors that clearly are discretionary, although it is required to attest to the factors that pertain to the prerequisites to arbitration, i.e., that the parties currently are in good standing with the association or were association members at the time the facts giving rise to the dispute occurred. The threat of perjury appears entirely at odds with a time limit that the grievance committee can waive at will and that has no legal effect other than to free the parties to pursue their claims in another forum.

Finally, if the obligation to file a request within 180 days is *not* binding, the clearly mandatory obligation under the agreement to use arbitration as the exclusive dispute resolution method would become largely illusory. Cf. *Cole* v. *Clifford*, supra, 2000 Mont. Dist. LEXIS *23 (stating in case where realtor agreement included express mandate to file request within 180 days, "[i]f a party with a dispute, who has agreed via contract to submit that dispute to mandatory arbitration, is permitted to wait out the limitations period prescribed by the arbitration clause, and then bring litigation in the court system, the very purpose of our state-enacted arbitration statutes has been thwarted"). A party seeking to avoid arbitration could, at the very least, all but guaran-

---

[12] The plaintiff crossed out the language in the arbitration request referring to the 180 day period and stated in a letter that accompanied the request: "Please note that the court ordered arbitration after the 180 day time limit had passed. This request for arbitration, therefore, has been filed after the 180 day time limit has passed. We have amended the request for arbitration to reflect this fact."

tee that it will not have to submit to arbitration simply by filing its court action well after the 180 day period has lapsed. After all, the party likely would have three to six years to bring its court action without violating the statute of limitations. This construction of the agreement runs counter to the general rule favoring arbitration as the preferred method of dispute resolution. *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 337, 857 A.2d 348 (2004) ("[a]rbitration is [a] favored [method of dispute resolution] because it is intended to avoid the formalities, delay, expense and vexation of ordinary litigation" [internal quotation marks omitted]); *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 248 Conn. 127 (Connecticut has "strong public policy favoring arbitration as an alternative method of dispute resolution"). Therefore, because the agreement is susceptible to two reasonable interpretations—that the 180 day period is either mandatory or discretionary—it is ambiguous as to the effect of filing an untimely request for arbitration.

Similarly, the grievance committee's decision does not make the basis of its decision clear so that we can determine whether its decision is dispositive of the plaintiff's claims or whether it leaves open the possibility of litigation.[13] The grievance committee's decision in the present case consisted of two documents. The first document, a letter from Jeffrey P. Arakelian, the president and chief executive officer of the association, simply stated that the grievance committee had concluded that the request for arbitration had not been

[13] The only evidence submitted to the trial court that bears on this issue is the second supplemental affidavit of Jeffrey P. Arakelian, the president and chief executive officer of the association, who stated therein that "[t]he [g]rievance [c]ommittee has sole responsibility for determining whether or not a matter is subject to arbitration, including, inter alia, whether it has been submitted within the *required* time frame and whether the issue relates to a real estate transaction and is properly arbitrable." (Emphasis added.)

filed within the aforementioned 180 day period and informed the plaintiff of its right to appeal should it disagree with the dismissal of its request. The second document, a form entitled "Report of Grievance Committee; Direction Whether or Not to Proceed With Arbitration," listed five possible dispositions and had a check mark next to the following statement: "Request for arbitration was not filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the fact[s] constituting the arbitrable matter could have been known in the exercise of reasonable diligence whichever is later."

When arbitration decisions are ambiguous, the courts have authority to remand the case, without vacating it, to the arbitral authority to clarify the basis of its decision. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 484–94, 857 A.2d 893 (2004) (discussing case law supporting such authority and limitations on arbitral authority in such instances solely to clarify basis of decision and not to redetermine merits), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005); see also *Phillips* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, supra, 2006 U.S. Dist. LEXIS *15–16 (denying motion for confirmation of award that dismissed request for arbitration on ground that request was untimely and remanding case to arbitral authority to clarify basis of decision to indicate whether dismissal was dispositive of claims or permitted litigant to pursue claims in court). In so doing, the court "ensures that private agreements to arbitrate are enforced according to their terms. . . . *Doctor's Associates, Inc.* v. *Casarotto*, 517 U.S. 681, 688, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996), quoting *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d

488 (1989). By allowing the arbitration panel to clarify its decision and to complete its assigned task, [the parties] will receive an arbitration award in accordance with the terms agreed to in their governing procedures." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* supra, 494.

Therefore, I would conclude that the most appropriate course of action is to reverse the trial court's decision and direct it to remand the case to the grievance committee for a clarification as to whether: (1) in the exercise of its discretion, the grievance committee declined to refer the matter to arbitration because the request had been filed beyond the 180 day period; or (2) the grievance committee was mandated under the agreement to dismiss the request because it has no jurisdiction over a request made beyond that 180 day period. I further would conclude that, if the grievance committee's articulation indicates that the dismissal was mandatory and jurisdictional, that articulation is the operative award in this case that triggers the parties' rights to seek vacation or confirmation.

Therefore, I respectfully concur in part and dissent in part.